**Salem**

ACB TRUCKING, INC.

v.

WILLIAM A. GRIFFIN

No. 1492-86

Decided February 16, 1988

COUNSEL

John P. Grove, Richard D. Lucas (Woods, Rogers & Hazlegrove, on brief), for appellants.

William A. Julias and Walter Lee Bailey, Jr., for appellees.

OPINION

**MOON, J.** — Pursuant to Code § 65.1-65 the Industrial Commission awarded benefits to certain surviving dependents of William A. Griffin. Appellant, ACB Trucking, Inc., asks that we reverse awards in favor of Griffin's stepson, Malcolm, and his natural child, Demerio, upon the ground that Griffin's estate had already received one full recovery in a third party wrongful death action. In the alternative, ACB asks that we reduce the amount of the awards to Malcolm and Demerio because the Industrial Commission wrongly awarded them excessive benefits by including the amounts which Griffin's wife and his other two children would have received except for their recovery under the Wrongful Death Act. We hold that Malcolm and Demerio are entitled to awards under Code § 65.1-65, but only to the proportionate shares they would have received if there had been no third party settlement and the employer had continued to pay all beneficiaries.

William A. Griffin died on October 18, 1982, in a traffic accident arising out of and during the course of his employment as a truck driver for ACB. His second wife (Loretta), two natural children (Kimberly and William), and his stepson (Malcolm), filed claims with the Industrial Commission which entered an award on October 6, 1983. The four claimants shared equally in payments of $155.83 per week. Demerio did not share in the initial award because he did not file a claim until April 14, 1986.

Griffin's administrator brought a wrongful death action in the United States District Court for the Western District of Virginia. A partially structured settlement of $279,000 concluded the action in December of 1984. The sum of $279,000 far exceeded ACB's total obligation of $77,915 to Griffin's beneficiaries under the Workers' Compensation Act. On the eve of the hearing to determine whether the settlement should be approved, Demerio intervened in the federal action seeking a portion of the distribution. Pursuant to the Wrongful Death Act's provisions, Loretta, William, Kimberly and Demerio were eligible beneficiaries. *See* Code § 8.01-53(A)(i). However, Malcolm could not recover any funds in the settlement because he was not Griffin's natural son. *See* Code § 8.01-53. All eligible beneficiaries except Demerio received awards substantially in excess of the amount they would have been entitled to receive under the Workers' Compensation Act. Demerio received only $500.00, far less than the amount he could

receive under the Workers' Compensation Act.[1]

When Demerio subsequently filed his claim with the Industrial Commission, ACB contended that the Workers' Compensation Act's statute of limitations barred his application. At the time of Griffin's death, Code § 65.1-87 provided that potential beneficiaries must file their claims for benefits within one year after the employee's death.

Deputy Commissioner Powell decided on July 15, 1986, that Demerio was entitled to share in the payments along with the other four beneficiaries. However, the deputy held that Demerio's benefits would begin on the date of his opinion, and would not be payable retroactively to the date of the original claim. Thus, after the deputy commissioner's opinion, Demerio, Malcolm, Loretta, Kimberly and William shared the $155.83 in five equal shares. From this award Demerio did not appeal. ACB appealed that aspect of the award which provided for recovery by Demerio and Malcolm.

Upon learning that the Fourth Circuit Court of Appeals had approved the wrongful death settlement, the commission on appeal held first that because Loretta, Kimberly and William had received one full recovery from both the settlement and payments already made to them under the Workers' Compensation Act, they were no longer eligible for benefits. The commission, in effect, further held that Demerio and Malcolm would continue to receive benefits under the Act, and in addition could receive those benefits which Loretta, Kimberly and William would have received had they not obtained one full recovery. In order to determine the amount of benefits Demerio and Malcolm should receive, the commission first looked to the employer's maximum liability. Pursuant to § 65.1-65, ACB's maximum liability was $77,915. The commission ruled that ACB was entitled to credit for workers' compensation benefits which it paid through March 30, 1986, to Loretta, William, Jr., Malcolm and Kimberly. The commission also allowed ACB credit for the $500 Demerio received in the

---

[1] To facilitate the wrongful death settlement the employer's insurance carrier agreed to accept $7500 of the settlement in exchange for compromising its subrogation lien on the approximately $18,000 in workers' compensation benefits it had already paid. *See* Code § 65.1-41. Initially, the parties understood that the carrier would have no further liability for compensation benefits. However, when the wrongful death settlement was appealed, the workers' compensation insurance carrier was forced to continue to pay benefits.

third party settlement. After subtracting from $77,915 the amounts credited to ACB,[2] the commissioner found that ACB had a remaining potential liability of $57,365. Each week Malcolm and Demerio were to receive one half of $155.83 as long as they remained minor dependents and the benefits paid had not exceeded $57,365.

Finally, the commission ordered that Demerio would receive his benefits retroactive to the date of the original claim on December 4, 1982, rather than the July 15, 1986 date of the deputy's award.

I

We first address whether the Workers' Compensation Act's statute of limitations, Code § 65.1-87, bars Demerio's claim for benefits. At the time of William Griffin's death, Code § 65.1-87 required a beneficiary to file a claim within one year of the employee's death. Demerio filed more than three and a half years after his father's death. However, Code § 65.1-79 stipulates: "No limitation of time provided in this Act for the giving of notice or making a claim under the Act shall run against any person who is mentally incompetent or a minor dependent, so long as he has no guardian, trustee or committee."

The deputy commissioner found that because Demerio's mother, Tunderleah Griffin, was not his guardian for the purposes of Code § 65.1-79, the time limit prescribed in Code § 65.1-87 did not run against him. We agree. While the Act nowhere specifically defines "guardian," we find that Code § 65.1-76 provides pertinent authority to help in determining whether Tunderleah was Demerio's guardian. Code § 65.1-76 stipulates that when a minor dependent is entitled to a distribution of less than $300, a parent or natural guardian may receive the money. However, when a minor dependent receives more than $300, the section mandates that only the guardian of the minor's property or a suitable person appointed by the circuit court shall receive the money. From the distinction articulated in Code § 65.1-76, we conclude that the legislature clearly envisioned the need for a guardian with

---

[2] The commission determined the credits due to the workers' compensation insurance carrier by first noting the carrier had made payments of $28,049.40 up to March 30, 1986. It then subtracted from this amount the $7500 the carrier had received in its initial agreement to facilitate the settlement.

a legal obligation to protect the infant's property and pursue his claims when the minor dependent is entitled to sums exceeding $300. Demerio's natural mother, Tunderleah Griffin, had not been designated such a guardian.

This conclusion is consistent with prior commission decisions. In *Ingram v. Marval Poultry Co.*, 58 O.I.C 192 (1978), the decedent's widower and infant son filed for workers' compensation benefits one day after the statute of limitations had run. The Industrial Commission held that the widower's claim had expired. However, the commission also held that because the infant had not been appointed a guardian as contemplated by Code § 65.1-79, the statute of limitations did not run to bar his claim. Hence, despite the fact that the infant's natural father was still alive, the commission found the child had no guardian for the purposes of Code § 65.1-79. We believe the *Ingram* decision's definition of guardian in Code § 65.1-79 affords the level of protection needed for infants who unknowingly possess compensable claims. The guardian should have a legal duty to pursue the minor's workers' compensation claim. Because Demerio had no such guardian from the time of his father's death until the date he filed for compensation benefits, we hold that the statute of limitations delineated in Code § 65.1-87 did not run against him.

## II

Since Demerio timely filed his claim, we must now determine whether Demerio and Malcolm may recover under the Act. ACB has maintained that because William Griffin's dependents as a group received a greater sum from the third party settlement than they would have received under the workers' compensation scheme, each dependent's claim against the carrier is barred by the carrier's subrogation right codified in Code §§ 65.1-41 and 42. Therefore, concludes ACB, even though Demerio and Malcolm received far less in the third party settlement than they were entitled to receive under the Workers' Compensation Act, they may not assert a claim under the Act.

The issue presented derives from the conflict between the beneficiaries' right to compensation and the carrier's right to subrogation. Two statutes which are closely interrelated must be read and construed together and effect given to all of their provisions.

*See Norfolk & Western Railway Co. v. White*, 158 Va. 243, 160 S.E. 718 (1932). They should be construed, if possible, so as to harmonize, and force and effect should be given the provisions of each. *Lillard v. Fairfax County Airport Authority*, 208 Va. 8, 13, 155 S.E.2d 338, 342 (1962); *see also Joy v. Green*, 194 Va. 1003, 1008, 76 S.E.2d 178, 182 (1953); *Commonwealth v. Saunderson*, 170 Va. 33, 38, 195 S.E. 516, 519 (1938).

■ After considering these general principles, we conclude that the best means of reconciling the conflict between the dependents' statutory claims under Code § 65.1-65 and the carrier's statutory rights to subrogation under Code §§ 65.1-41 and 42 requires the commission to match each individual's third party recovery with that individual's workers' compensation benefits. When an estate's beneficiaries have received a third party recovery, the carrier's right to subrogation operates in relation to each beneficiary in an individual manner. The carrier may assert its right to subrogation on behalf of each individual only to the extent that individual has recovered money in the third party settlement. Thus, when a beneficiary has no third party claim or is not entitled to receive any funds pursuant to a third party settlement, the carrier will have no subrogation rights vis-a-vis that individual. When a beneficiary has received less under the settlement than he is entitled to receive under the Workers' Compensation Act, the employer may assert its subrogation rights up to the amount of money received by the beneficiary in the settlement.[3] Such a rule will adequately protect

---

[3] We recognize that in *Burgess v. Cargill, Inc.*, 55 O.I.C. 53 (1973) the Industrial Commission considered circumstances similar to the facts at bar when a deceased's estate received a $25,000 third party settlement for an accident in which the employer had incurred a workers' compensation obligation of $18,000. The commission found that because two infant dependents received $2,000 each in the third party settlement, they had received one full recovery and were therefore due no further workers' compensation payments from the employer. We note first that by its express terms, the *Cargill* opinion does not apply to Malcolm, for the commission in *Cargill* stated: "We pass no judgment on a different factual situation where a beneficiary under an award for workmen's compensation death benefits is not among the class of beneficiaries entitled to payment under the Death by Wrongful Act statute." *Id.* at 56-57. Since Malcolm was not eligible to participate in the third party settlement, *Cargill* clearly does not mandate a determination that he has received one full recovery.

The rationale in *Cargill* does apply to Demerio because it appears evident that the two infant dependents would have received more under the Workers' Compensation Act than they received in the third party settlement. However, we choose not to follow *Cargill* because we feel the better rule matches each individual's third party benefits with the funds owed him under workers' compensation.

each beneficiary's right to compensation while concurrently ensuring that no beneficiary obtains a double recovery. *See Sheris v. The Sheris Co.*, 212 Va. 825, 834, 188 S.E.2d 367, 373 (1972); *Noblin v. Randolph Corp.*, 180 Va. 345, 358, 23 S.E.2d 209, 214 (1942). Applying these principles to the facts at bar, we conclude that the carrier may exercise its right of subrogation against Demerio only to the amount of $500, the amount Demerio received in the third party settlement. Since Malcolm received no funds under the terms of the settlement, the carrier has no right of subrogation for his claim.

## III

We now address the amount of workers' compensation which Malcolm and Demerio should receive. If there had been no third party settlement, under Deputy Commissioner Powell's opinion of July 15, 1986, each of the five beneficiaries would have been entitled to $31.16 per week. However, the commission decided that ACB still had a maximum liability of $57,365 remaining after the third party settlement had terminated the status of Loretta, William and Kimberly as eligible beneficiaries under the Workers' Compensation Act. The commission then concluded that Malcolm and Demerio should share in this amount equally by dividing the payments of $155.83 per week until either their dependency expired or the liability completely depleted. In effect, the commission authorized Malcolm and Demerio to receive those funds which Loretta, Kimberly and William would have received had they not obtained a full recovery.[4]

The Workers' Compensation Act is highly remedial and should be liberally construed in favor of the workman. *Barker v. Appalachian Power Co.*, 209 Va. 162, 166, 163 S.E.2d 311, 314 (1968). However, liberality of construction does not authorize the amendment, alteration or extension of the Act's provisions. It does not require that every claim asserted should be allowed. The employer and the insurance carrier also are entitled to fair considera-

---

[4] The commission's decision obviously would not have had the effect of transferring *all* the benefits which Loretta, Kimberly and William received because the employer was credited for money paid to the three prior to the date of the full commission's opinion. However, the decision did authorize Demerio and Malcolm to receive the funds which Loretta, Kimberly and Malcolm would have received *after* the date of the commission's decision if they had remained eligible beneficiaries.

tion. *Raven Red Ash Coal Corp. v. Absher*, 153 Va. 332, 335, 149 S.E. 541, 542 (1929).

█ We find no statutory authority for the commission's interpretation of the Act's provisions. Although the commission never asserted that it was reapportioning benefits, its holding had the uncontrovertible effect of transferring to Demerio and Malcolm benefits which would have been payable to Loretta, William and Kimberly had there been no third party claim settlement. This is an unauthorized alteration of the Act's structure. Code § 65.1-69 delineates the only circumstances under which the commission may reapportion benefits. Benefits may be reapportioned when a recipient's dependency has terminated due to: (1) death (2) marriage and (3) the attainment of 18 years of age.[5] The section makes no provision for reapportionment upon a third party settlement which excludes some beneficiaries from further receipt of payments. We hold, therefore, that Malcolm and Demerio are entitled to receive only the one-fifth shares which they would have been entitled to receive had William, Loretta and Kimberly continued to receive benefits. Thus, ACB must pay Demerio and Malcolm $31.16 per week until its total liability of $31,160, two-fifths of the liability at the time of Griffin's death, has expired or terminated pursuant to Code § 65.1-69.

Our holding is consistent with the resolution of the issues discussed in section II of this opinion. Just as the insurer cannot oppose claims by individuals on the ground that the estate as a whole experienced one full recovery in a third party settlement, neither can the individual beneficiaries lay claim to benefits statutorily designed for all members of the estate.

## IV

Finally, we address whether the commission correctly awarded payments retroactively to Demerio so that he would receive compensation for the weeks preceding the deputy commissioner's opinion of July 15, 1986. ACB contends that the commission should not have considered the question of retroactive payments because Demerio did not appeal that determination.

---

[5] We do not decide what should happen if any of the five beneficiary's dependency terminated under Code § 65.1-69. Those issues should be addressed by the commission if and when they occur.

■ Rule 2(A) expressly delineates the means by which parties may attain review by the full commission: "A request for review must be in writing and must be filed with the Clerk of the Commission . . . . A request for review should specify each determination of fact or law to which exception is taken." Rules of the Industrial Commission, Rule 2(A). Demerio filed no exceptions to the deputy commissioner's determinations. Indeed, Demerio's counsel filed no papers whatsoever during this appeal's consideration. Therefore, we find that Demerio is bound by the deputy commissioner's opinion and may not receive retroactive payments.

## V

In summary, we hold that Malcolm shall continue to receive $31.16 per week for the remainder of the 500 weeks which began with the first award of October 6, 1983. Should his dependency terminate under the Act's provisions, then so will his eligibility for the payments. Until Demerio's eligibility terminates under the Act, he will also receive payments of $31.16 per week over the remainder of the 500 weeks which began with the October 6, 1983 award. The insurance carrier may reduce its payments by $500.00, the amount Demerio received in the third party settlement. Demerio's receipt of payments will begin only from July 15, 1986, the date of the deputy commissioner's opinion.

*Reversed and remanded.*

Koontz, C.J., and Coleman, J., concurred.