**Alexandria**

CLAUDE G. COOPER, BUILDING OFFICIAL FOR FAIRFAX COUNTY, VIRGINIA,

JANE W. GWINN, ZONING ADMINISTRATOR FOR FAIRFAX COUNTY, VIRGINIA, and BOARD OF SUPERVISORS OF FAIRFAX COUNTY, VIRGINIA

v.
OCCOQUAN LAND DEVELOPMENT CORPORATION, and
STATE TECHNICAL REVIEW BOARD

No. 1250-86-4

Decided March 7, 1989

---

COUNSEL

J. Patrick Taves, Assistant County Attorney (David T. Stitt, County Attorney; George A. Symanski, Jr., Senior Assistant County Attorney, on brief), for appellants.

Robert S. Perry for appellee, Occoquan Land Development Corporation; Richard C. Kast, Assistant Attorney General (Mary Sue Terry, Attorney General on brief), for appellee, State Technical Review Board.

OPINION

**BENTON, J.**—This appeal arises from a circuit court's dismissal of an appeal from a decision of the State Technical Review Board (the Board). We are asked to consider (1) whether the notice of appeal of the Board's decision was timely filed; (2) whether the Board had jurisdiction to hear the appeal from the local building code appeals board; and (3) whether certain building permits were properly revoked by the local building official for false statements or misrepresentations of fact in the applications. We answer each question in the affirmative, and, because the Board's determination was without substantial evidence to support it, we reverse the judgment of the circuit court.

I

Occoquan Land Development Corporation (Occoquan) obtained permits to build single family dwellings on three lots in Fairfax County. Soon after the issuance of the permits, heavy rains caused flooding on two of the lots. Claude G. Cooper, a county building official, then revoked the building permits because the site plans and applications which had been submitted by Occoquan did not "contain complete and accurate information regarding soil and drainage conditions." All the parties agree that the portion of the applications relating to grading and drainage review, which presumably would have revealed high water table conditions, remained blank. Occoquan had certified, however, on each building permit application "that the information [on the application] is complete and correct." In addition, Occoquan's engineer had certified on the site plan which was submitted as a part of the building permit application "that this drawing or plan and related spec-

ifications . . . are in conformance with all applicable local ordinances or regulations." Local ordinances prohibited construction on land where high water table conditions exist until adequate safeguards are taken.

Occoquan appealed the revocation of the permits to the Fairfax County Board of Building Code Appeals (the "local board"), which ordered reinstatement of the permits but only "upon full compliance with the building code and accompanied by engineering documentation on establishing flood plains and a soils report on each lot." Occoquan then appealed the local board's decision to the State Technical Review Board, which concluded that the building permits should not have been revoked because there was "insufficient evidence that any false statements or misrepresentations of fact were made in the application for the permits." The Board ordered the permits restored "subject to the provisions of the Virginia Uniform Statewide Building Code in effect at the time the permits were issued." The County entities appealed the Board's decision to the circuit court. Concluding that the County had failed to file timely a notice of appeal as required by Rule 2A:2, the circuit court judge dismissed the appeal. The judge also concluded that even if the notice had been effective, the Board's decision on the merits was not in error.

## II

With regard to the judge's procedural ruling, we note at the outset that the parties stipulated in the circuit court that counsel for the County mailed the notice of appeal to the Board on August 21, 1985, and received the certified mail receipt showing delivery to the Board on August 22, 1985. The record of this case contains a copy of a certified mail receipt showing that the County caused a document to be delivered to the Board on August 22, 1985. Applying Rule 2A:2, which governs the filing of a notice of appeal pursuant to the Administrative Process Act, the circuit judge ruled that circumstantial evidence established that the notice of appeal was received by the Board on August 22, 1985, more than 30 days after July 20, 1985, the date the trial judge determined the final order of the Board was entered.

The record, however, does not support the judge's ruling that the Board's order was entered July 20, 1985. The date of entry of

the Board's order is ambiguous at best. The order contains three different dates. The first date, contained in the last sentence of the order, recites that "[t]his decision has been entered this 28th day of June 1984 A.D." — almost one year before the date of the actual hearing of the case. Appearing, without explanation, below the chairman's signature is another date, "July 20, 1985." Finally, the date "July 23, 1985" appears, without explanation, at the end of the document below the secretary's attestation.

Despite the ambiguity concerning the date of entry of the order, the circuit judge decided that "[t]he final order of the Board was 'entered' when it was signed by the chairman" on July 20, 1985. In so deciding, the judge compared the Board's order to that of a circuit court's final order, which is entered when the circuit judge affixes his or her signature to the document. It also appears that the judge assumed that July 23, 1985, was the date that the signature of the secretary of the Board was affixed to the order. Deeming that July 23, 1985, was the date upon which occurred the purely ministerial function of certifying the authenticity of the document, the judge apparently discarded July 23, 1985 as the date of entry of the order. Although the judge's opinion letter does not specify a reason for discarding the date stated on the Board's order as the entry date ("this 28th day of June 1984 A.D."), the conclusion that the date of entry was in fact June 28, 1985, is nothing more than sheer speculation and is not supported on this record.

In view of the plain error on the face of the order (reciting the date of entry as June 28, 1984 — almost one year prior to the hearing) and in the absence of Board regulations governing the date of entry of its orders, we conclude that no rational basis supports the circuit judge's determination that July 20, 1985, rather than July 23, 1985, was the date from which the thirty day requirement of Rule 2A:2 should be measured. Significantly, the Board's responsive pleading in the circuit court admitted that the date of entry of its decision was July 23, 1985. Despite that admission the trial judge picked one of the other two dates on the order and ruled the notice untimely.

We also believe that consideration should have been given to Code § 9-6.14:14 of the Administrative Process Act, which mandates that the Board serve its decisions upon the "parties by mail unless service otherwise made is duly acknowledged . . . in

writing." The Board could not have served its decision prior to July 23, 1985, the date the trial judge apparently assumed to be the date the order was authenticated by the authorized Board representative. Unless the mandatory mailing requirement of Code § 9-6.14:14 is read in connection with the notice requirement of Rule 2A:2, there exists a real possibility that the Board's failure to mail the order promptly could deprive a party of the right to appeal. In this case, for example, even if we assume that the order was intended to recite an entry date of June 28, 1985 (instead of "entered this 28th day of June 1984 A.D." as erroneously stated on the order), the order was not mailed to the parties until July 23, 1985, or sometime thereafter, twenty five or more days after its entry. Where two provisions are in potential conflict, it is this Court's duty to construe those provisions in a manner which would give full force and effect to both provisions. *See Kirkpatrick v. Bd. of Supervisors*, 146 Va. 113, 125, 136 S.E. 186, 190 (1926). We will not presume that the legislature intended to work an injustice on the parties. *See Ferguson v. Ferguson*, 169 Va. 77, 87, 192 S.E. 774, 777 (1937).

For the foregoing reasons, we hold that the selection of July 20, 1985, as the date upon which the order was entered is not supported by the record. The patent ambiguity in the Board's own order concerning the date of entry of the order does not permit a rational conclusion that the Board's order was entered prior to the last date contained on the order — July 23, 1985. We further conclude that since the record establishes that the order was not authenticated and mailed until July 23, 1985, at the earliest, this record does not provide a basis upon which to conclude that the notice of appeal was not timely and that such an ambiguity must not control the disposition of this dispute. Accordingly, we now consider other issues raised in this appeal.

## III

Occoquan waited some fifteen months after revocation of the permits before appealing the decision to the local board. The County contends that although the building code contains no provision limiting the period within which appeals may be taken to the local board, some time limit should apply. Accordingly, the County argues the time limit must be determined by the life of the permits and applications as controlled by Virginia Uniform

Statewide Building Code (USBC) §§ 104.10 and 109.9.[1] Based upon the application of either of these provisions, the County asserts that Occoquan's failure to appeal the revocation of the permits within six months barred appeal of the then expired permits and applications. A review of these provisions, however, indicates that they have no application to the circumstances of the present dispute.

█ USBC § 104.10, entitled "Time limitation of application," concerns a party's lack of diligence in seeking to resolve problems delaying the initial issuance of the permit. The plain language of the provision indicates that it applies to applications for permits, not to permits issued but subsequently revoked. In the present case, Occoquan applied for the permits on May 9, 1983. The permits were issued on May 23, 1983. There are no indications in the record that Occoquan failed to act diligently in resolving any problems preventing issuance of the permit. In fact, the permits were issued within two weeks time.

USBC § 109.9, which concerns dilatoriness in commencing authorized work after the issuance of the permit, is likewise inapplicable. The permits were issued to Occoquan on May 23, 1983; however, before construction could begin, the permits were revoked on June 23, 1983. Once revoked, no "authorized work" existed to commence or continue, within the contemplation of USBC § 109.9.

█ Furthermore, Code § 36-114 provides that "[t]he Review Board shall have the power and duty to hear all appeals from decisions arising under application of the Building Code." Thus, even if either USBC § 104.10 or § 109.9 was applicable, the

---

[1] At the time the permits were revoked, the two Code provisions provided in pertinent part as follows:

104.10 *Time limitation of application*: An application for a permit for any proposed work shall be deemed to have been abandoned six months after the date of filing unless a permit has been issued or, unless the applicant has diligently sought to resolve any problems that are delaying issuance of the permit; except that for reasonable cause, the building official may grant one or more extensions of time.

109.11 *Suspension of permit*: Any permit issued shall become invalid if the authorized work is not commenced within six months after issuance of the permit, or if the authorized work is suspended or abandoned for a period of six months after the time of commencing the work.

In the current Code former USBC § 109.11 (cited above) is now USBC § 109.9. In addition, USBC § 104.10 has been substantially changed.

Board would still retain jurisdiction to determine whether the facts of this case justified the conclusion that the permits had lapsed. Consequently, we find no merit to the County's contention that USBC §§ 104.10 and 109.9 deprived the Board of jurisdiction to hear Occoquan's appeal or to order restoration of the permits.

## IV

USBC § 109.8 provides that "[t]he building official may revoke a permit or approval issued under the provisions of the USBC in case of any false statement or misrepresentation of fact in the application or on the plans on which the permit or approval was based."[2] After hearing the evidence, the Board ruled that "[t]here is insufficient evidence that any false statements or misrepresentations of fact were made in the application for the permits." We are asked to decide whether substantial evidence existed in the agency record in support of the Board's determination. "Substantial evidence refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Roanoke Memorial Hosps. v. Kenley*, 3 Va. App. 599, 610, 352 S.E.2d 525, 531 (1987)(quoting *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983)). The findings of the Board may be rejected " 'only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" *Id.* (emphasis in original). After reviewing the record as a whole under this standard, we conclude that the circuit judge erred in affirming the Board's ruling that insufficient evidence existed of false statements or misrepresentations of fact.

The parties do not dispute that those portions of Occoquan's applications concerning grading and drainage review remained blank and that Occoquan, in signing these applications, certified that the information on each application was complete and correct. Both Occoquan and the Board argue that this deficiency was due to the failure of the County to conduct the grading and drainage review. The County readily admits that it did not conduct such a review. Occoquan and the Board assert, therefore, that because the deficiency was due to the County's error, Occoquan's certification that the applications were complete did not constitute

---

[2] Former USBC § 109.8 is now § 109.10.

a false statement or misrepresentation sufficient to revoke the permits under USBC § 109.8. We disagree. The language of USBC § 109.8 does not distinguish between false statements or misrepresentations which are sufficient to trigger revocation of the permits and false statements or misrepresentations which will be deemed insufficient to trigger such revocation. Indeed, the provision expressly refers to "*any* false statement or misrepresentation of fact in the application." USBC § 109.8 (emphasis added). Regardless of whose error resulted in the deficiency, it was incumbent upon Occoquan, in submitting its applications, to ascertain whether those applications were complete. The County's failure to conduct a review was translated into an affirmative misrepresentation by Occoquan when Occoquan certified that the applications were complete and correct, when in fact they were incomplete.

We recognize that this deficiency may have been the result of oversight on Occoquan's part, and that Occoquan may not have intended to misrepresent information in its applications. USBC § 109.8, however, contains no language requiring that the false statements or misrepresentations be intentionally made, and we decline to judicially amend that provision to require such intent. Indeed, one of the primary purposes of the building code is to assure the safe and lawful construction of structures. *See* Code § 36-99; *Virginia Elect. & Power Co. v. Savoy Constr. Co.*, 224 Va. 36, 43, 294 S.E.2d 811, 817 (1982). To require a finding that the misrepresentation was intentional before the permit could be revoked would undermine this legislative goal. The mere fact that a misrepresentation is unintentional should not prevent the building official from revoking a permit, thereby preventing construction of a building which might be unsafe under the submitted specifications.

In sum, we conclude that sufficient evidence of false statements or misrepresentations in the applications did exist to allow the building official to revoke the permits. The Board's determination otherwise was without substantial evidence to support it. Because our conclusion on this point is dispositive, we need not reach the other issues the County raises in this appeal. Accordingly, the decision of the circuit court is reversed.

*Reversed.*

Duff, J., concurred.

Barrow, J., dissenting

In my opinion the trial court did not err in concluding that the Notice of Appeal from the decision of the State Technical Review Board was not timely filed. Therefore, I dissent from the majority's decision.

In this case the County was required to file a Notice of Appeal within thirty days after entry of the Board's final order. Rule 2A:2. The certified mail receipt contained in the record shows that a document which the parties agree was a Notice of Appeal was filed on August 22, 1985. Thus, the Notice of Appeal was timely only if the Board's order was entered on or after July 23, 1985.

The Board's order has three different dates. The last sentence recites that it was "entered this 28th day of June, 1984 A.D." Appearing below the chairman's signature, without explanation, is the date "July 20, 1985." Finally, the date "July 23, 1985" appears below the secretary's attestation.

An examination of the three dates reveals a rational basis supporting the trial court's decision that the order was entered on July 20, 1985. The date of July 23, 1985, appearing below the secretary's attestation, established at most that the secretary attested to the order on that date. From the date of attestation, we can only determine that the order was entered on or before that date. Since the earliest of the three dates on the order, June 28, 1984, is facially incorrect, this date must be discarded as the date upon which the order was entered. Rejecting these two dates leaves only July 20, 1985 (the date written below the chairman's signature). In my opinion the trial court's selection of this date was reasonable and supported by the record; using this date, the Notice of Appeal was not timely. Therefore, I cannot join in the majority's conclusion that there is no rational basis to support the trial court's determination that the Board's order was entered on July 20.

Also, I cannot agree that the requirement contained in Code § 9-6.14:14, requiring the Board to serve its decisions upon the "private parties by mail," alters the requirements of Rule 2A:2. First, the provisions of Code § 9-6.14:14 apply expressly to "private parties" which Fairfax County is not. More importantly, neither Code § 9-6.14:14 nor Rule 2A:2 ties the thirty day time

period required for filing the Notice of Appeal to the date of the mailing of the final order. Only the Supreme Court can change a rule of court and only the legislature can amend statutes. Therefore, I cannot join the majority in expanding the scope of Code § 9-6.14:14 to rectify the County's failure to file its Notice of Appeal within the time required by the Rules of the Virginia Supreme Court.

For these reasons I would affirm the judgment of the trial court and must dissent from the decision of the majority.