## Salem

### CLARA E. CRABTREE

v.

### BILLY JACK CRABTREE, JR.

No. 0314-92-3

Decided September 21, 1993

COUNSEL

(Thomas P. Walk; Altizer, Walk and White, on brief), for appellant.

No brief or argument for appellee.

OPINION

**COLEMAN, J.**—Clara E. Crabtree (mother) appeals from the circuit court's decree denying her motion for an increase in child support and modifying the child visitation schedule for Billy Jack Crabtree (father), her former husband. She contends that (1) the circuit court could not reinstate the case on its docket after it had transferred the matters of child support and custody to the juvenile and domestic relations district court, and (2) the circuit court erred by not specifying in writing, as required by Code § 20-108.1, why the amount of child support should continue to deviate from the presumptively correct amount according to the guidelines. For the reasons that follow, we affirm the decisions of the trial court.

The parties were divorced by an April 15, 1991, divorce decree entered by the Circuit Court of Tazewell County. The mother was granted custody of their two children and, based on a verbal agreement between the parents, the court awarded her $400 per month child support. The father was granted "reasonable," as well as specified, child visitation rights. According to the mother, the support that the father presumptively would have been required to pay according to the guidelines at the time of the award and now, based on the parents' combined gross income, is $514.70. The trial judge did not make a written finding as to the presumptive amount of child support according to the guidelines and did not explain in writing why the amount of child support ordered to be paid by the father should deviate from the guidelines. *See* Code § 20-108.1(B). The divorce decree also transferred "all matters . . . pertaining to child support, visitation rights [and] custody . . . to the Juvenile and Domestic Relations [District] Court of appropriate jurisdiction, for enforcement or modification or revision thereof as the circumstances may require, as provided by [Code §] 20-79." Neither party appealed that decree.

Five months after entry of the divorce decree, the Juvenile and Domestic Relations District Court of Tazewell County, over the father's objection, transferred the case to the Juvenile and Domestic Relations District Court of Chesterfield County, the jurisdiction where the mother and children resided. The mother filed a motion in the Chesterfield juvenile court for an increase in child support. Several days later, the father filed a motion in the Tazewell County Circuit Court, pursuant to Code § 20-121.1, to reinstate the case on its docket and to enforce his visitation rights. After a hearing, the Tazewell County Circuit Court reinstated the case on its docket "to fully and

completely define the visitation granted" to the father. Over the mother's objection, a hearing was conducted on November 4, 1991, in the Tazewell County Circuit Court. The court considered the father's motion to modify his visitation with the children and the mother's motion filed in the matter in the Chesterfield juvenile court to increase child support. The circuit court judge denied the mother's motion to increase child support and, on the father's motion, modified the father's child visitation schedule. In the decree denying the mother an increase in child support, the trial judge made no written findings as to the presumptive amount of child support, nor did he explain in writing why the amount of child support should continue to deviate from the presumptive amount under the guidelines.

## I.

We first consider whether the circuit court had authority to reinstate the case on its docket and to entertain the parties' motions to enforce visitation rights and to modify child support after having transferred "all matters . . . pertaining to child support, visitation rights [and] custody of the minor children" to the juvenile and domestic relations district court pursuant to Code § 20-79(c). The mother contends that once the circuit court transferred those matters to the juvenile and domestic relations court, it divested itself of any continuing jurisdiction and that it could not thereafter entertain the motions to increase child support or enforce its visitation order, except by appeal as provided in Code § 20-79(c).

We hold that a "transfer" of "any other matters pertaining to support and maintenance . . . and custody" to the juvenile and domestic relations district court pursuant to Code § 20-79(c) conveys concurrent jurisdiction on the juvenile and domestic relations district court to hear those matters, but the transfer does not divest the circuit court of its continuing jurisdiction to consider those issues, should it exercise its discretion to do so. Accordingly, the circuit court had authority to reinstate the case on its docket and to consider the motions to modify child support and visitation.

The resolution of the question of what effect a "transfer" under Code § 29-79(c) has upon the jurisdiction of the circuit court to consider those "matters" depends upon the effect of several statutes which define the powers and jurisdictions of the two courts. Although this is a question which repeatedly confronts the circuit and juvenile and domestic relations district courts, we address the question for the first

time. The resolution of the question depends upon whether a "transfer" of "matters" under Code § 20-79(c) divests a court of record of its continuing jurisdiction as provided by Code § 20-108 to also address those issues "transferred to the juvenile and domestic relations district court."

█ Code § 16.1-244 provides that circuit courts and juvenile and domestic relations district courts have concurrent jurisdiction over "custody, guardianship, visitation or support of children when such [an issue] is incidental to the determination of causes pending in such courts." *See Peple v. Peple,* 5 Va. App. 414, 418, 364 S.E.2d 232, 235 (1988). Code § 20-79(c) provides in pertinent part:

> After the entry of a decree of divorce a vinculo matrimonii the court may transfer to the juvenile and domestic relations district court any other matters pertaining to support and maintenance for the spouse, maintenance, support, care and custody of the child or children on motion by either party, and may so transfer such matters before the entry of such decree on motion joined in by both parties. In the transfer of any matters referred to herein, the court may, upon the motion of any party, or on its own motion, and for good cause shown, transfer any matters covered by said decree or decrees to any juvenile and domestic relations district court within the Commonwealth that constitutes a more appropriate forum. An appeal of an order by such juvenile and domestic relations district court which is to enforce or modify the decree in the divorce suit shall be as provided in § 16.1-296.

Nevertheless, Code § 20-121.1 authorizes a circuit court to reinstate a suit that has been stricken from the docket in order to grant complete relief. Code § 20-108 provides that a circuit court, after entry of a final decree of divorce, has continuing jurisdiction to change or modify its decree as to matters affecting custody, support, and visitation of minor children. Thus, although a final divorce decree had been entered, when the case was reinstated on the docket of the circuit court, the case was "pending" for consideration of those matters over which the circuit court had continuing jurisdiction.

█ Where statutes are in potential conflict with one another, they must be construed consistently with one another, if possible, so as to give full force and effect to each. *Nelson v. County of Henrico,* 10 Va. App. 558, 561, 393 S.E.2d 644, 646 (1990); *Cooper v. Occoquan Land Dev. Corp.,* 8 Va. App. 1, 6, 377 S.E.2d 631, 633 (1989), *rev'd*

*on other grounds,* 239 Va. 363, 389 S.E.2d 464 (1990); *ACB Trucking, Inc. v. Griffin,* 5 Va. App. 542, 547-48, 365 S.E.2d 334, 337-38 (1988).

▮ Code § 20-79(c), providing for a transfer of "enforcement" of "any other matters" after the final divorce to the juvenile and domestic relations district court, and Code § 20-108, providing for continuing jurisdiction in the circuit court, are not incompatible. The former does not mandate, nor does it explicitly state, that a circuit court is "divested" of its "jurisdiction" to consider those matters over which it had concurrent jurisdiction when it transferred all issues pertaining to enforcement or modification of child support and custody to the juvenile and domestic relations court. If the jurisdiction of the circuit court was to "cease" when it re-empowered the juvenile and domestic relations district court to consider those issues after transferring those matters, Code § 20-79(c) would have so provided, as is the case with Code § 20-79(a). By transferring "all matters" to the juvenile and domestic relations district court after the divorce, both courts had concurrent jurisdiction to adjudicate those issues. The jurisdiction of the juvenile and domestic relations district court had simply been pre-empted by virtue of Code § 20-79(a) after the divorce court decreed upon those issues.

▮ Code § 20-79(c) does not place a limitation on the circuit courts' concurrent and continuing jurisdiction to decide the recurring issues of child support, custody and visitation in domestic relations cases. To the contrary, Code § 20-79(c) was intended to expand the means available to circuit courts to enforce or modify support and custody matters, rather than to limit such options. The purpose of Code § 20-79(c) was to provide another forum to expedite matters of enforcement and modification by referring those issues to juvenile and domestic relations courts, where the dockets and procedures usually enable the parties to obtain earlier hearings and decisions on issues that frequently demand expedited consideration. Code § 20-79(c), which authorizes the circuit court to transfer certain issues over which it has jurisdiction to the juvenile and domestic relations district court, does not transfer or divest jurisdiction nor does it provide that jurisdiction "ceases." We will not read such a provision into the statute.

▮ Were we to limit the circuit court's continuing jurisdiction when it might be the most appropriate forum to grant complete relief, we would be ruling in a manner contrary to the purpose of Code §§ 20-79

and 20-108. To so hold would undermine the purpose of those statutes by requiring parties to litigate issues in a court not of record, even when they know, or the circuit court determines, that the issues will ultimately be litigated in a court of record. A circuit court that transfers any matters to the juvenile and domestic relations district court pursuant to Code § 20-79(c) retains the power, in its discretion, to exercise its continuing jurisdiction over those matters. Statutes should not be construed in a manner that "would . . . enervate [and] impede . . . the administration of the . . . laws of the State." *Shilling v. Commonwealth,* 4 Va. App. 500, 504, 359 S.E.2d 311, 313 (1987). We will not adopt a construction of the statutes that would needlessly require issues to be remanded to a court not of record before they can be heard in the circuit court. The circuit court had continuing jurisdiction, and, after it transferred issues of enforcement and modification of support and custody and visitation to the juvenile court, it retained the power, in its discretion, to reinstate the case on its docket and to adjudicate those issues.

## II.

We next address the question whether a trial judge in a support modification proceeding is required to specify in writing why an earlier award of child support should continue to deviate from the guidelines when the judge has determined that no material change in circumstances justifies a modification of the last child support award.

In all child support proceedings originating after July 1, 1989, courts must apply the provisions of Code §§ 20-107.2 and 20-108. *See Barnhill v. Brooks,* 15 Va. App. 696, 699, 427 S.E.2d 209, 212 (1993); *Hiner v. Hadeed,* 15 Va. App. 575, 578-79, 425 S.E.2d 811, 813 (1993). These statutes provide for the calculation of a presumptively correct amount of child support, which is based on a percentage of the parents' combined gross monthly income. *Id.* If a trial judge determines that the amount of a child support award should deviate from the presumptive amount, the judge must make written findings of fact explaining the reasons for the deviation. Code § 20-108.2; *Barnhill,* 15 Va. App. at 699-700, 427 S.E.2d at 212; *Hiner,* 15 Va. App. at 579, 425 S.E.2d at 813-14. The statutory guidelines must be applied not only in the initial child support hearing, but also in hearings to modify support. *Taylor v. Taylor,* 10 Va. App. 681, 684, 394 S.E.2d 864, 866 (1990).

■ Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award. The moving party has the burden of proving a material change by a preponderance of the evidence. *Antonelli v. Antonelli,* 242 Va. 152, 154, 409 S.E.2d 117, 118-19 (1991). If the initial support award was made before July 1, 1989, the effective date of the guidelines under Code § 20-108, the moving party may satisfy the material change in circumstances requirement by showing that the amount of the award varies significantly from the presumptive amount under the guidelines. *Milligan v. Milligan,* 12 Va. App. 982, 988, 407 S.E.2d 702, 705 (1991). If, however, the initial award was made after the effective date of the Code § 20-108 guidelines, a significant variation between the presumptive amount and actual support amount is not sufficient to justify review of the award, and the moving party must prove a material change of circumstances. *Barnhill,* 15 Va. App. at 700, 427 S.E.2d at 212.

Here, the trial judge first decreed an amount of child support based on the agreement of the parties on April 15, 1991, after the guidelines had gone into effect on July 1, 1989, and presumably after having considered the presumptively correct amount according to the guidelines. Thus, the mother, in order to obtain an increase in child support, had the burden of proving that a material change in the parents' ability to provide support or the children's needs had occurred in the five-month period after the trial judge had awarded support.

The mother did not prove the threshold element that a material change in circumstance had occurred that would justify an increase in the amount of child support. Not only was the mother's income the same in November, 1991, as in April, 1991, she received a larger percentage of take-home pay in November, 1991. The mother resided at the same home and paid the same rent. While some of her expenses, such as health insurance, had increased, other expenses, such as day care, had decreased. The father's ability to provide support had not changed. The fact that the initial amount of child support was less than the presumptive amount under the guidelines does not constitute a "material change in circumstances," because the initial support award was entered after the effective date of the guidelines. *Id.*

Accordingly, without proof of a material change in circumstance, the trial judge was not required to calculate the presumptive amount under the guidelines or to justify by written findings of fact why the previous child support award should continue to deviate from the pre-

sumptive amount. *See id.; Hiner,* 15 Va. App. at 579, 425 S.E.2d at 813.

*Affirmed.*

Baker, J., concurred.

Benton, J., dissenting.

The Circuit Court of Tazewell County had no authority to reinstate on its docket the case that had been transferred to the Juvenile and Domestic Relations District Court. The order reinstating the case on the circuit court's docket occurred five months after the circuit judge transferred by final decree enforcement of all matters pertaining to custody and visitation to the juvenile court. That reinstatement order violated Rule 1:1 and lacks any statutory foundation.

The circuit court entered the divorce decree in 1991. By the terms of the decree, the mother was granted custody of the two children and was awarded $400 per month as child support. The father was granted visitation as specified in the decree. The decree also transferred jurisdiction over "all matters . . . pertaining to child support, visitation rights [, and] custody . . . to the Juvenile and Domestic Relations Court of appropriate jurisdiction, for enforcement or modification or revision thereof as the circumstances may require, as provided by [Code §] 20-79."

Five months after entry of the decree, the Tazewell County juvenile court transferred the case to the Chesterfield County juvenile court, the jurisdiction where the mother and the children then resided. The mother filed a motion in the Chesterfield County juvenile court for an increase in child support. Several days later, the father filed a motion to reinstate the case on the docket of the circuit court. After a hearing, the judge of the circuit court reinstated the case on the docket and changed the visitation schedule that was specified in the decree.

The majority's opinion holds that a transfer of a case to the juvenile court after entry of a final decree pursuant to Code § 20-79(c) "conveys concurrent jurisdiction" to allow either the circuit court or the juvenile court to act upon the transferred matter. That holding reads into the statute an added jurisdictional element where none exists. In pertinent part, Code § 20-79(c) states:

After the entry of a decree of divorce a vinculo matrimonii the court may transfer to the juvenile and domestic relations district

court any other matters pertaining to support and maintenance for the spouse, maintenance support, care and custody of the child or children on motion by either party, and may so transfer such matters before the entry of such decree on motion joined in by both parties. In the transfer of any matters referred to herein, the court may, upon the motion of any party, or on its own motion, and for good cause shown, transfer any matters covered by said decree or decrees to any juvenile and domestic relations district court within the Commonwealth that constitutes a more appropriate forum. An appeal of an order by such juvenile and domestic relations district court which is to enforce or modify the decree in the divorce suit shall be as provided in § 16.1-296.

Nothing in Code § 20-79 creates concurrent jurisdiction in the circuit court after the transfer.

The statutes that delineate the jurisdiction of the circuit court and the juvenile court are quite clear and unambiguous. When the legislature has intended to convey concurrent jurisdiction, it has clearly stated its intention. *See* Code § 16.1-244. Indeed, in interpreting Code § 16.1-244, this Court has held that circuit courts and juvenile courts have concurrent jurisdiction over "custody, guardianship, visitation or support of children" when such an issue is incidental to the determination of causes pending in such courts. *See Peple v. Peple,* 5 Va. App. 414, 418, 364 S.E.2d 232, 235 (1988). After the circuit court entered the final decree and transferred this case to juvenile court, *no cause remained pending* in the circuit court.

Although a circuit court generally has continuing jurisdiction under Code § 20-108 to change or modify its decree as to matters affecting minor children, the Tazewell County circuit court divested itself of the right to do so by transferring those matters to the juvenile court pursuant to Code § 20-79(c). By its explicit terms, Code § 20-79 provides the bases upon which the circuit court transferred to the juvenile court for enforcement, modification, or revision "all matters . . . pertaining to child support, visitation rights, [and] custody of the minor children." The statute also references the appeal procedure by which the case could be returned to the circuit court. Only through exercise of the appeal procedure could the case be "reinstated" in the circuit court. Thus, when the father sought relief in the circuit court, he was attempting to circumvent the final decree and the statutory framework for relief.

The husband pled no statutory or case law authority for the reinstatement of the case in the circuit court. In granting the motion, the circuit judge likewise cited no authority. I find no authority to support the circuit judge's order reinstating the case on the circuit court's docket.

The majority's decision allowing the circuit court to reinstate on its docket any matter that it had by final order transferred to the juvenile court clearly violates Rule 1:1. Twenty-one days after entry of its order transferring the case to the juvenile court, the circuit court had no authority to entertain a motion to reinstate the case on its docket for enforcement and modification. *See* Rule 1:1. Neither the Rules of Court nor the statutory scheme confers discretionary authority to the circuit court to exercise continuing jurisdiction over matters that the circuit court had transferred to the juvenile court after entry of the final decree. Moreover, the majority opinion offers no authority for allowing the circuit judge to circumvent Rule 1:1.

Pursuant to the order transferring the case, the juvenile court was authorized to handle "all matters . . . pertaining to child support, visitation rights [, and] custody . . . for enforcement or modification or revision thereof as the circumstances may require." Those matters fall within the power, competence, and expertise of the juvenile court. Thus, complete relief could have been obtained in the juvenile court. In addition to being violative of the rules and statutes, the action of the circuit court reinstating the case on its docket was unnecessary and redundant. *See Smith v. Smith,* 4 Va. App. 148, 150, 354 S.E.2d 816, 817 (1987).

Moreover, Code § 20-79(c) contains a specific reference to Code § 16.1-296 as the mechanism for an appeal back to the circuit court from the juvenile court to which a decree has been transferred for enforcement or modification of the decree. Code § 16.1-296 provides both a right to appeal and a specific identification of the circuit court to which the appeal shall be taken. "In any case which has been referred or transferred from a circuit court to a juvenile court and an appeal is taken from an order or judgment of the juvenile court, the appeal shall be taken to the circuit court which had original jurisdiction of the case." Code § 16.1-296. These statutes clearly provide that the husband's procedural route back to the circuit court was by appeal from a final order of the juvenile court.

The majority's holding permits the parties to circumvent final orders and shop for the forum that one party believes might be more favorable to his or her claim. When the circuit judge transferred jurisdiction to the juvenile court for the enforcement, modification, or revision of matters related to the children, the circuit judge implicitly made the determination at that time that the administration of the terms of the decree would be best served and efficiently monitored in the juvenile court. The majority's decision, allowing a circuit judge to disregard his or her prior order, sanctions a result that is clearly not provided for by the statutory scheme or legislative intent. *See Owens v. Commonwealth,* 129 Va. 757, 760, 105 S.E. 531, 532 (1921). The majority's decision does not advance the administration of justice.

Code § 20-79(c) allows the circuit court to take advantage of a variety of well recognized strengths of the juvenile court. As the majority recognizes, juvenile courts have the ability to expedite family matters. Juvenile courts also have the ability to provide a more informal setting for the resolution of family matters. In addition, the juvenile courts often have an expertise in the resolution of family disputes that may not be available in the more structured environment of a court of record. The circuit court's ability to utilize the services of the juvenile court is not a limitation on the options available to the circuit court. Moreover, contrary to the views expressed in the majority opinion, it is not a foregone conclusion that "the issues [that these parties could not resolve between themselves] . . . ultimately [had to] be litigated in a court of record." It is just as likely that the juvenile court could have resolved the dispute in a manner that was satisfactory to the parties.

The juvenile court does not serve a "needless" role in the resolution of family matters. Nothing about the circuit court makes it "the most appropriate forum to grant complete relief" in a family matter that has already been decided by final decree and can only be modified upon a showing of a change in circumstances. When the final decree of divorce was entered, the circuit judge transferred the case to the juvenile court and obviously concluded at that time that the transfer was appropriate. Once the transfer was made, the juvenile court was equally equipped to grant complete relief to the parties in the custody and visitation dispute and was the appropriate forum for enforcement, modification, and revision.

For these reasons, I dissent. I would hold that the circuit judge exceeded his power when he reinstated on his docket the case that had been transferred to the juvenile court more than twenty one days prior to the reinstatement order.