# CIRCUIT COURT OF THE CITY OF WINCHESTER

Marty C. Wright

v.

James S. Wiedower et al.

September 26, 2001

Case No. (Law) 01-103

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on September 18, 2001, for argument on the Defendant's University of Virginia Medical Center and Health System's Demurrers to a medical malpractice action based on sovereign immunity. David H. N. Bean, Esquire, appeared for the Plaintiff; Melvin E. Williams, Esquire, appeared for defendants University of Virginia Medical Center and Health System; Mark A. Brown, Esquire, appeared for the defendant Wiedower; Jennifer E. Cremins, Esquire, appeared for the defendants Jones and Winchester Medical Center; and Charles Y. Sipe, Esquire, appeared for defendant Young.

## I. *Statement of Material Facts*

For the purpose of ruling on the Demurrers based on sovereign immunity, the following facts are not in dispute.

This a medical malpractice action filed against the University of Virginia Medical Center and Health System and other individual and corporate defendants. The University of Virginia Medical Center and University of Virginia Health System are public institutions or agencies established pursuant to Va. Code § 23-77.3.

The University Medical Center and University Health System base their demurrers on the fact that they are agencies of the Commonwealth, and they

claim that the Virginia Tort Claims Act does not apply to agencies of the Commonwealth, so their sovereign immunity is absolute.

## II. *Conclusions of Law*

The University of Virginia and its affiliated agencies and institutions are immune from suit as agencies of the Commonwealth of Virginia, except to the extent that the Commonwealth has withdrawn the cloak of immunity by promulgating the Virginia Tort Claims Act, Virginia Code § 8.01-195.1 *et seq*. See *Halberstam v. Commonwealth*, 251 Va. 248, 468 S.E.2d 783 (1996) (George Mason University); *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984) (applied to the Frederick Campus of Tidewater Community College); *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980) (the University of Virginia). In promulgating the Virginia Tort Claims Act, the Commonwealth has abrogated the absolute rule of sovereign immunity in cases arising from "personal injury or death caused by the negligent or wrongful act or omission of any employee where the Commonwealth . . . if a private person, would be liable to the claimant for such damage, loss, injury, or death." Virginia Code § 8.01-195.3.

In this case, the University of Virginia argues that, since it is a state agency, as opposed to the abstract political entity the Commonwealth of Virginia, the Tort Claims Act does not apply to it, so it is entitled to absolute immunity. This precise issue was raised but not decided in *Halberstam v. Commonwealth*, 251 Va. 248, 251, 468 S.E.2d 783 (1996) (George Mason University), but, in considering the requisite statutory notice in that case, the Supreme Court held that "the language of Code § 8.01-195.6 is unambiguous," so this statute must be examined in the overall context of the Virginia Tort Claims Act to determine whether state agencies may be held liable under the Virginia Tort Claims Act.

Virginia Code § 8.01-195.6 provides in pertinent part that:

> Every claim cognizable against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney, or representative has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and *the agency or agencies alleged to be liable. . . .*
>
> *Claims against the Commonwealth involving medical malpractice shall be subject to the provisions of this article* and to the provisions of Chapter 21.1 (§ 8.01-581.1 *et seq*.) of this title.

However, the recovery in such a claim involving medical malpractice shall not exceed the limits imposed by § 8.01-195.3.

(Emphasis added.)

While the Tort Claims Act "is a statute in derogation of the common law doctrine of sovereign immunity and, therefore, must be strictly construed. . . ." *Halberstam v. Commonwealth*, 251 Va. 248, 250, 468 S.E.2d 783 (1996), its construction is still subject to well established principles of statutory construction. "The primary objective of statutory construction is to ascertain and give effect to legislative intent." *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). In interpreting statutes, "courts should give the fullest possible effect to the legislative intent embodied in the entire statutory enactment." *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989). To do so, "two statutes which are closely interrelated must be read and construed together and effect given to all of their provisions." *ACB Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d 334 (1988) (citations omitted). Potentially conflicting statutes should be harmonized to give force and effect to each. *See Board of Supervisors v. Marshall*, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975). "When the language of a statute is plain and unambiguous . . . the statute [must be construed] in accordance with that plain meaning." *Smith Mountain Yacht Club, Inc. v. Ramaker*, 261 Va. 240, 247, 542 S.E.2d 292 (2001). It is a "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *Sansom v. Board of Supervisors of Madison County*, 257 Va. 589, 595, 514 S.E.2d 345, 349 (1999).

The statutory notice prescribed by Virginia Code § 8.01-195.6 requires that the "state agency or agencies alleged to be liable" be set forth in the notice. If a state agency has absolute immunity how can it be liable unless the Tort Claims Act has abrogated its immunity?

"The Commonwealth of Virginia" is a political abstraction which embraces many entities and persons. "[T]he State can act only through individuals. . . ." *Messina v. Burden*, 228 Va. at 308, 321 S.E.2d at 661. In express recognition of the principles of agency which underlie any negligence action against the Commonwealth and its agencies, the Tort Claims Acts defines "agency,"[1] Virginia Code § 8.01-195.2, and it requires the claimant to

---

[1]  Virginia Code § 8.01-195.2 defines a state agency as: "'*Agency*' means any department, institution, authority, instrumentality, board, or other administrative agency of the government of the Commonwealth of Virginia and any transportation

specifically identify the State "agency or agencies alleged to be liable." Virginia Code § 8.01-195.6. A medical malpractice claim is a "claim cognizable against the Commonwealth" because it is a personal injury claim, *see* Virginia Code § 8.01-195.3, and § 8.01-195.6 specifically provides that "claims against the Commonwealth involving medical malpractice shall be subject to the provisions of this article. . . ."

In *Lawhorne v. Harlan*, 214 Va. 405, 407, 200 S.E.2d 569 (1973), which was decided before the Virginia Tort Claims Act was enacted, the Supreme Court held that the University of Virginia Hospital and its employees, which included a surgical intern who had been sued for negligence, were entitled to the protection of sovereign immunity. In its ruling, the Supreme Court of Virginia reviewed the principles of sovereign immunity as they applied to employees of a state agency and ruled:

> This immunity is also available to an employee of the state *or to one of its agencies* who performs supervisory functions or exercised discretionary judgment within the scope of his employment. He will not be held liable for simple negligence, because *his acts are the acts of the Commonwealth*.

*Id*. at 407 (emphasis added).

The legal channel through which sovereign immunity flows from the sovereign to its agents is different than the legal channel through which vicarious liability flows from the agent to the principal. "Under Virginia's approach to sovereign immunity, the doctrine is viewed as having developed from being simply a "privilege of sovereignty" into a mainstay of public policy." *Burnham v. West*, 681 F. Supp. 1169, 1171-72, (E.D. Va. 1988). As a creature of public policy, the cloak of protection of sovereign immunity begins with the Commonwealth and flows down to its agencies and agents who act for it in performing its various governmental functions; consequently, the scope of sovereign immunity is determined by public policy considerations, which only incidentally involve considerations of control as in *James v. Jane, supra*. However, to determine the scope of vicarious liability which may flow up the chain of supervision from the agent to the principal, the entire focus of the inquiry is on the principal's ability to control its agent. Traditional principles of agency govern the potential liability of a health care

---

district created pursuant to Chapter 45 (§ 15.2-4500 *et seq*.) of Title 15.2 and Chapter 630 of the 1964 Acts of Assembly."

provider for the actions of a third party. *See Naccash v. Burger*, 223 Va. 406, 418-19, 290 S.E.2d 834 (1982) (action of nurse).

In *Lohr v. Larsen*, 246 Va. 81, 431 S.E.2d 642 (1993), the Supreme Court applied the *James v. Jane* control test and held that a public health physician who was employed by the State Health Department was entitled to the protection of sovereign immunity. The paradox which *Lohr* and *James* present *vis a vis* the purview of the Tort Claims Act is this. In cases like, *Lohr v. Larsen, supra,* malpractice claims against physicians employed by State agencies who are directly controlled by a State agency and who exercise no control over their patients are barred by the doctrine of sovereign immunity. While *Lohr* does not mention the Tort Claims Act, it appears to be an unconditional application of the protection of sovereign immunity to employee physicians like Dr. Larsen. Conversely, applying the general law of vicarious liability, a viable malpractice claim against a faculty physician, like the neurosurgeon, Dr. Jane, who both teaches and practices at the University of Virginia Medical Center, will not result in the Commonwealth of Virginia being liable for his tort under the doctrine of respondeat superior, because the State has only "slight" control over such physicians. *See James v. Jane, supra,* at 54. Therefore, if physicians under the direct control of the Commonwealth's agencies are absolutely protected by sovereign immunity and if the Tort Claims Act does not apply to agencies of the Commonwealth like the University of Virginia Medical Center and its agents and employees, what class of persons commits the acts giving rise to the "claims against the Commonwealth involving medical malpractice" which are cognizable under the Tort Claims Act? If the Tort Claims Act does not apply to State agencies, why does the statute define "state agency"? Unless the terms "agencies of the Commonwealth" and "the Commonwealth" are synonymous under the Tort Claims Act, the Act is rendered meaningless insofar as medical malpractice actions are concerned. *But see Halberstam v. Commonwealth*, 35 Va. Cir. 454 (Fairfax 1995) (sovereign immunity not waived for actions against agencies of the Commonwealth); and *Mpras v. Community Living Alternatives*, 35 Va. Cir. 264 (Fairfax 1994) (action against the Commonwealth and Department of Mental Health dismissed for failure to comply with notice provisions of § 8.01-195.6).

Therefore, this Court concludes that as state agencies, the University of Virginia Medical Center and the University of Virginia Health System are within the purview of the Virginia Tort Claims Act.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Demurrers of the University of Virginia Medical Center and the University of Virginia Health Systems are overruled, and these defendants shall have twenty-one days within which they are to file their grounds of defense.