# Richmond.

## PLANT LIPFORD, INC., v. E. W. GATES & SON COMPANY, INC.

March 19, 1925.

Absent, West, J.

Case submitted for decision before Judge Kelly qualified.

1. ACCOUNT STATED—*Sales—Action by Seller—Defense of Account Stated— Case at Bar.*—In the instant case, an action by seller of goods for future deliveries against buyer for breach of the contracts, defendant interposed the defense of account stated. This account related solely to specific items of merchandise which had been delivered by the plaintiff to the defendant, the charges therefor, and the credits thereon, and had no reference to the unperformed contracts for future delivery of merchandise which could only be properly charged when delivered. The basis of the present action was the claim for damages arising out of the allegation that the defendant failed to order or to designate the place for such deliveries, so that it would have been both impossible and improper to enter any part of such claim for damages on the current account for merchandise which had been actually delivered.

    *Held:* That as to the unascertained damages for breach of the contracts for future delivery, there was no account stated.

2. SALES—*Action by Seller against Buyer—Breach of Contract—Resale— Damages—Evidence Sufficient to Support Verdict for Plaintiff.*—In the instant case, an action by seller of goods for future deliveries against buyer for breach of contracts, the evidence in support of the damages sustained by the plaintiff showed that the plaintiff was ready and willing to perform its contracts with defendant; that it made proper tender of the merchandise; and that after repeated efforts to secure performance, and after notifying the defendant of its purpose to resell at defendant's risk, the plaintiff did resell the merchandise covered by six of the contracts, and charged the defendant with the difference between the contract price and the amount realized. As o the other three contracts, the plaintiff took the merchandise covered by them at the prevailing market price, and charged the defend-

ant with the difference between the contract price and the market price. The prices realized on resale were good, and there was nothing to suggest that larger prices could have been realized.

*Held:* That a verdict for plaintiff was not contrary to the law and the evidence.

3. SALES—*Action by Seller Against Buyer—Instructions—Case at Bar.*—In an action by seller against buyer for breach of contracts for future deliveries, judgment was for plaintiff, the instructions were numerous, carefully prepared, submitting to the jury all question of fact involved, and fully covering the contentions and defenses of the defendant. In some respects they were more favorable to the defendant than the evidence justified. While it was not difficult to find hypercritical objections to some of the instructions, they fully safeguarded every substantial right of the defendant, and an assignment of error in the giving and refusal of instructions could not be sustained.

4. APPEAL AND ERROR—*Assignment of Error—Error in the Admission of Testimony—Specifying Error.*—Under section 6346 of the Code of 1919 an assignment of error must lay its finger on the error complained of; it must point out the error, and where there is no specific assignment of error in the admission of testimony, a general discussion of the character of evidence which the party contends should not have been admitted by the court is clearly insufficient as an assignment of error as required by section 6346.

5. SALES—*Action by Seller Against Buyer—Breach of Contracts for Future Deliveries—Damages—Ascertainment of Loss by Jury.*—In an action by seller of goods for future deliveries against buyer for breach of the contracts, if the jury found that the contracts of sale were made and violated, it was properly left to them to determine under the instructions of the court whether the ascertainment of loss by the plaintiff in the method pursued by it was reasonable and not prejudicial to the defendant.

6. SALES—*Action by Seller Against Buyer—Resale—Propriety of Resales for Jury.*—In an action by seller of goods for future deliveries against buyer for breach of the contracts, the seller, after notice to the buyer, had resold the goods. In ascertaining the fairness of the resales, and the reasonableness of the time, method, and place of making the the resales, there were many controverted questions and claims and counterclaims as to the delay which arose and as to the sales themselves which rendered it proper to leave the question as to the propriety of the resales, in the manner in which they were made, to the jury.

7. SALES—*Rescission of Contract—Subsequent Claim for Breach of Terms.*—Where a contract of sale is mutually rescinded, whether the seller was acting as an ordinary seller or as a broker, neither party can subsequently make a claim for a breach of the terms of the cancelled agreement.

8. SALES—*Action by Seller Against Buyer—Damages—Remittitur—Case at Bar.*—In the instant case, an action by seller of goods for future deliveries against buyer for breach of the contracts, all of the claims of plaintiff for breaches of the several contracts were merged in a single verdict for an aggregate amount, and the court could have no knowledge of the manner in which the jury, in considering the several claims of the plaintiff, arrived at that amount. The plaintiff brought about this situation by combining his claims for damages arising out of the several sales in one suit. Therefore, where one of the contracts of sale had been rescinded by mutual consent, the court was justified in regarding the verdict as if it included the amount claimed under that contract and in putting the plaintiff upon terms to remit that amount or submit to a new trial.

9. NEW TRIALS—*Damages—Remittitur.*—Appellate and trial courts, in cases in which excessive damages have been awarded, and in which the plaintiff is entitled to substantial damages, may indicate the excess and give plaintiff the option to remit and take judgment for the residue or be awarded a new trial. The Virginia statutory law recognizes the right of the trial court to direct a *remittitur*, and allow the party against whom it is ordered to accept under protest and to appeal from the judgment on the reduced verdict. Code of 1919, section 6335.

10. NEW TRIALS—*Damages—Remittitur.*—In a case in which the law prescribes a definite rule by which the damage is to be fixed, and the verdict is excessive, then the trial court should reduce the verdict.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Meredith & Meredith* and *Fulton & Wicker,* for the plaintiff in error.

*Thos. B. Snead* and *A. B. Dickinson,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

In this case our labors have been greatly increased because of disregard of the second rule of this court, requiring a concise abstract or statement of the facts, and by the failure to concede that the verdict of the jury has settled the substantial conflicts in the testimony.

We state the facts as we gather them from the record, which are determined by the verdict, and for brevity, as well as for clearness, omit many incidental matters.

E. W. Gates & Son Company, Inc. (plaintiff), was a wholesale grocer, importer and manufacturers' agent, while Plant Lipford, Inc. (defendant), operated five separate retail grocery stores, known as the "Piggly Wiggly" stores. By this motion the plaintiff seeks to recover of the defendant damages for alleged breach of certain contracts for the sale and future delivery of certain merchandise. The giving and acceptance of the several orders for such future deliveries are shown by the plaintiff and the breach of these contracts by the defendant also sufficiently appears. During the time these contracts for future delivery were outstanding, the defendant was buying other goods from the plaintiff, and a controversy arose as to the correctness of their running accounts. The goods which were to be delivered under the contracts for future delivery were to be delivered as directed by the defendant, and the particular store or stores of the defendant to which they were to be sent properly designated. By their custom, and indeed it is difficult to conceive how it could have been otherwise, the books of the plaintiff did not show any merchandise charged to the defendant until it had been delivered, so that these running accounts showed little relating to these outstanding contracts for future delivery, because such debits were only made when and as the goods covered by these contracts were ordered out and the places of delivery designated by the de-

fendant. Certain differences between the parties as to this merchandise account led to several conferences, the result of which was, as claimed by the defendant, the ascertainment of a balance due by the plaintiff of $814.31. This balance so due to the defendant arose chiefly out of another transaction having no relation to any of these, in which the plaintiff collected for the account of the defendant $1,464.65.

One defense to this action which is greatly emphasized is that there was an account stated between the parties which covered all their transactions showing such balance in favor of the defendant of $814.31.

[1] From this statement of facts, of which, as to the stated account, there is little serious contradiction, it is perfectly apparent to us, as it was to the trial court, that this contention cannot be sustained. The account about which the parties disputed and conferred related solely to specific items of merchandise which had been delivered by the plaintiff to the defendant at its five several retail groceries in the city of Richmond, the charges therefor and the credits thereon. It had no reference to these unperformed contracts for future delivery of merchandise which could only be properly charged when delivered. The only basis for this action is the claim for damages arising out of the allegation that the defendant failed to order or to designate the place for such deliveries, so that it would have been both impossible and improper to enter any part of such claim for damages on the current account for merchandise which had been actually delivered. There is no need, then, to discuss the principles applicable or the circumstances under which a claim will be held to be an account stated, because the plaintiff in this case conceded to the defendant the credit of $814.31, while as to these unascertained damages for breach of these contracts it is clear that there was no stated account.

The jury found this verdict: "We the jury find for the plaintiff, and after deducting the sum of $814.31 as instructed, do fix the damages due to the plaintiff to be the sum of four thousand five hundred and sixty-one dollars and twenty-six cents." The defendant moved to set aside the verdict as contrary to the law and the evidence, and the court ruled that unless the plaintiff remitted from the verdict of the jury $1,982.37, it would grant the motion of the defendant, set aside the verdict and award a new trial. Whereupon the plaintiff accepted this reduction in the verdict under protest, and because of this enforced reduction the plaintiff is assigning cross-error.

The assignments of the plaintiff in error here (the defendant) may be thus summarized: (1) The refusal of the court to set aside the verdict as contrary to the law and the evidence; (2) the giving and refusal of instructions; and (3) error in the admission of evidence.

[2] 1. What we have said already in reciting the facts, which are concluded by the verdict, is sufficient to show that unless the plaintiff failed to show damages, the first assignment is clearly without merit. The evidence in support of the damages sustained by the plaintiff shows that the plaintiff was ready and willing to perform its contract with the defendant; that it made proper tender of the merchandise referred to in the contracts; and that after making repeated efforts to secure performance and after notifying the defendant of its purpose to resell the merchandise at the defendant's risk and expense, the plaintiff itself took the brooms and fruit referred to in three of the contracts at the prevailing market price for that merchandise, and charged the defendant with the difference between the contract price and the market price. As to the merchandise covered by the other six contracts (having given no-

tice), the plaintiff as promptly as was prudent, to the best advantage possible, according to established business methods, sold those goods and charged the defendant with the difference between the contract prices and the amount realized from such resales. It is shown that good prices were realized therefor, and there is nothing in the evidence which fairly suggests that any larger amounts could have been realized on such resales. So that the reduced verdict of the jury is sufficiently supported by the testimony.

[3] 2. There is an elaborate discussion of the instructions and the claim that there are prejudicial errors in the instructions given as well as in the refusal to give certain others tendered by the defendants. As to these assignments, too, we shall speak only in general terms.

The instructions which were given are eleven in number. They cover six and one-half pages of one of the briefs, and we shall not encumber this opinion by reprinting them. They are carefully prepared; they submit to the jury all the questions of fact involved; they fully cover the contentions and defenses of the defendant. In one aspect of the controversy they are more favorable to the defendant than the evidence in the case justifies. This is true of instruction 10 which submitted to the jury the question as to whether there had been an account stated between the parties as to the unliquidated damages arising under these contracts for future delivery. If the jury under that instruction had found for the defendant, it would have been an unsupported verdict. It may be, however, that a verdict in favor of the defendant would have been sustained for another reason, as claimed by the defendant, namely, that the contracts had been substantially abandoned by the plaintiff. One of the instructions per-

mits the jury to find such release by abandonment, if the preponderance of the evidence justified it. Another would have justified a verdict for the defendant in case the jury believed that the plaintiff acquiesced in the defendant's failure or refusal to accept the goods covered by such contracts. While it is not difficult to find. hypercritical objections to some of these instructions (and this is usually true), they fully safeguarded every substantial right of the defendant.

[4] 3. The third assignment is to the effect that the court erred in the admission of certain testimony. The answer to that assignment from the brief of the attorney for the E. W. Gates & Son Company expresses our view as to this assignment: "It will be observed that there is in the petition for a writ of error no specific assignments of error in this behalf. There is a general discussion of the character of evidence which the defendant contends should not have been admitted by the court, but this is clearly insufficient as an assignment of error as required by section 6346 of the Code. To comply with the requirements of the statute, the assignment of error must 'lay its finger on the error' complained of; it must point out the error. It is not sufficient to take 'a shot into the flock.'" *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Va. Iron, etc., Co.* v. *Odle's Adm'r*, 128 Va. 280, 105 S. W. 107; *Cottrell* v. *Commonwealth*, 134 Va. 564, 113 S. E. 728; *Puckett* v. *Commonwealth*, 134 Va. 578, 113 S. E. 853.

Examining the assignment further and the record more closely, we are ourselves in the same predicament in which the learned attorneys for the petitioner found themselves, and are unable to discover any harmful error in the admission of testimony so as to specify it. The case presented many serious difficulties to the trial court, but was most carefully tried, and there was

scrupulous regard for the legal rights of both of the litigants.

4. The reasons which justified the reduction of the verdict by $1,982.00, in which action we concur, are expressed in the opinion of the trial judge, Honorable Beverley T. Crump, which, upon this and the other substantial questions, we quote from with approval:

"The evidence in this case is very voluminous, and the examination on some matters was unnecessarily protracted. The primary issue for the jury to determine was whether the several sales contracts, claimed by the plaintiff to have been made with the defendant, had been established by the evidence, and if so established in each instance, then whether there had been a violation of each contract by the defendant, and what damages, if any, the plaintiff had suffered. The case was unusual in that several separate sales were alleged by the plaintiff to have been made to the defendant in the course of their dealings and an aggregate amount of damages claimed as the result of failure on the part of defendant to take the goods sold, this aggregate amount being the total of the several losses stated as ensuing upon the violation of each sale contract. The trial of the case was burdensome, inasmuch as the making of the several sales, all of which were put in issue by the defendant, required independent testimony in support of each sale and in denial of it by the defendant, and as to the resultant loss claimed in each case.

"Under the circumstances disclosed in the evidence, I do not think that there was any error in the giving and refusing of instructions prejudicial to the defendant.

[5-7] "The jury were, of course, the sole judges as to the credibility of the witnesses and as to the reasonableness of their testimony. If the jury found that the contracts of sale were made and violated, I think it was

properly left to them to determine under the instructions of the court whether the ascertainment of loss by the plaintiff in the method pursued by it was reasonable and not prejudicial to the defendant. If the instructions of the court as to the measure of damage and the sales made by plaintiff are not in strict accord with the modern decisions, I rather think they were favorable to the defendant. In ascertaining the fairness of the resales, and the reasonableness of the time, method and place of making the resales there were many controverted questions and claims and counterclaims as to the delay which arose and as to the sales themselves which rendered it proper to leave the question as to the propriety of the resales, in the manner in which they were made, to the jury. As to the instances in which it was sought to recover the difference between the contract price and the market value, the evidence likewise shows that there were many subsidiary questions in controversy between the parties, which had a bearing upon the ascertainment of the value of the goods, and the manner in which the market value was ascertainable.

"Instructions 4 and 5 are somewhat concise and might have been more elaborately and clearly expressed, but I think they stated the principle intended to be conveyed touching the instances in which the exact goods sold and not accepted should be resold, in such a way that it was understood by the jury.

"The conclusion to be reached upon the evidence as to the asparagus contract is so clear as to enable the court to pass upon the claim for a violation of that contract as a matter of law. The evidence establishes that there was an order given for the asparagus and that the asparagus was brought to Richmond and paid for by the defendant. But it also appears by the evidence on both sides that the defendant refused final acceptance of

these goods and claimed a credit for their purchase price, which was not immediately acquiesced in by the plaintiff but was then allowed to stand in settlement between the parties, and the plaintiff's understanding that this contract had been rescinded by mutual agreement of the parties is put beyond question by the claim made several months later in the following spring that the defendant had been given too large a credit on the cancellation and that a small amount was still due the plaintiff to correct the error.   Whether the plaintiff here was acting as an ordinary seller or in this instance was acting as a broker does not affect the result.   The contract which it made with the defendant was mutually rescinded, and neither party can subsequently make a claim for a breach of the terms of the cancelled agreement.   There seem to be some authorities otherwise, but the principle as just stated is upheld and made law in Virginia by the recent case of *Juniper Lumber Co.* v. *Nelson* (June, 1922), 133 Va. 146, 112 S. E. 564, 24 A. L. R. 247.   The loss claimed by the plaintiff to have been sustained by defendant's failure to accept the asparagus is $1,982.00, and this claim cannot be sustained.

"The testimony as to the raisins is not very conclusive, but there is sufficient conflict in the evidence to necessitate the submission of that matter to the jury, and the court cannot interfere with their conclusion.

[8-10] "All the claims of the plaintiff being joined in one action, they are all merged in a single verdict for an aggregate amount, and the court can have no knowledge of the manner in which the jury, in considering the several claims of the plaintiff, arrived at that amount, except by speculation, which it is useless to enter upon. The plaintiff has brought about this situation by combining his claims for damages arising out of the several

sales, claimed to have been made, in one suit, and the court therefore will regard the verdict as if it included the amount claimed to have been lost by reason of the purchase of the asparagus.

"In the case of *Honaker* v. *Shrader*, 115 Va. 318, 79 S. E. 391, the court, in holding that the practice of putting a party upon terms on a motion for a new trial applied to an action of ejectment, stated that the practice in general was 'wise and salutary, saving delay, costs, and above all ending strife.'

"In section 560 of 2 Sutherland on Damages (5th Ed.), the author in the course of his treatment of this subject, says: 'The tendency of the late decisions in the State courts, except as has been otherwise indicated, is in the direction of unqualified support for the practice which allows the appellant and trial courts, in cases in which excessive damages have been awarded, and in which the plaintiff is entitled to substantial damages, to indicate the excess and give him the option to remit it and take judgment for the residue or be awarded a new trial.' And see Burks Pl. & Pr. (2d ed.), pp. 537-38.

"The recent cases in Virginia exhibit the same tendency. See the discussion of this subject in *Dupont Co.* v. *Taylor*, 124 Va. 750 (on pages 762 to 766), 98 S. E. 866, and also the dissenting opinion of Judge Prentis. The Virginia statutory law recognizes the right of the trial court to direct a *remittitur*, and allow the party against whom it is ordered to accept under protest and to appeal from the judgment on the reduced verdict. Code of Virginia, section 6335. * * In such cases as the case in hand, in which the law prescribes a definite rule by which the damage is to be fixed, and the verdict is excessive, then the trial court should reduce the verdict.

"In this case the verdict is necessarily to be regarded as erroneous because the jury may have allowed damages by reason of the claim on account of the asparagus contract. It is true there does not appear a definite certain sum, as to which a manifest error has been made, and by deducting it the excessive verdict can be readily brought to a correct amount by putting the prevailing party on terms. Nevertheless, I think the court is justified under the circumstances appearing here in putting the plaintiff upon terms to the extent of reducing the verdict by the full amount of his claim of damages for the asparagus or else having the verdict set aside and a new trial awarded, as the law fixes a standard by which the damages are to be measured, as stated in the instructions—20 R. C. L., p. 316-7. And this will be done. *Northwestern Port Huron Co.* v. *Zickrick*, 32 S. D. 28, 141 N. W. 983, Ann. Cas. 1915-B, p. 166. * *"

*Affirmed.*