UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Lorish and Senior Judge Annunziata
Argued by videoconference


ILANGO MARAG

MEMORANDUM OPINION[*] BY
v.        Record No. 0224-22-4        JUDGE MARY GRACE O'BRIEN
NOVEMBER 1, 2022

SHAFINAH SAMSUDIN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas P. Mann, Judge

David Horowitz (Law Office of David Horowitz, PLLC, on briefs),
for appellant.

Mehagen D. McRae (Fayez Goriup McRae PLLC, on brief), for
appellee.


Ilango Marag ("father") appeals an order denying his motion to modify child support and

awarding attorney fees to Shafinah Samsudin ("mother"). In nine assignments of error, father

challenges the court's decisions excluding documentary evidence and witness testimony, denying a

continuance, granting a motion to strike, and awarding attorney fees.

BACKGROUND

Following a June 2020 trial, the court entered a divorce decree that included findings

regarding the parties' respective annual incomes and ordering father to pay child support pursuant to

the guidelines in Code § 20-108.2(B). The court subsequently vacated the decree and granted

father's motion to reconsider its determination of childcare costs, but it denied father's request to

recalculate the parties' incomes. On September 4, 2020, the court entered an amended divorce

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

decree, reiterating its findings that father earned $150,000 annually and mother earned $95,448 annually. The amended divorce decree ordered father to pay guideline child support in the amount of $2,400 per month.

Father noted an appeal but never filed an opening brief, and the appeal was dismissed in January 2021. Eight months later, in August 2021, father filed a *pro se* motion to modify his child support obligation.[1] In his motion, father challenged the court's determination of mother's income in 2020, asserted that his income had decreased since the amended divorce decree, and stated that he spent considerable funds caring for his parents who had lived with him since 2012. He also contended that mother no longer incurred the work-related childcare expenses specified in the decree.

The court entered a scheduling order on September 15, 2021, and set trial for January 12, 2022. Father propounded discovery on September 14; three days later, before mother's responses were due, father filed motions to compel, modify child support *pendente lite*, and expedite the trial. He set the motions for October 1, but the court removed them from the docket because father had not first conferred with mother's counsel and had violated a local rule against scheduling multiple motions for the same day without leave of court. Although mother's discovery responses were not due until October 5, on September 29 father once again attempted to docket his motions to compel and for *pendente lite* relief, along with a motion to continue the trial. The court declined to set the motions for a hearing.

Mother objected to father's requests for documents from 2019 and 2020 because the requests sought information predating entry of the amended divorce decree on September 4, 2020,

---

[1] Father obtained counsel on October 21, 2021. Approximately one month later, counsel moved to withdraw. Father proceeded *pro se* through trial before retaining a new lawyer to handle post-trial motions and this appeal.

and therefore went "beyond the scope" of his motion to modify child support. Nevertheless, mother did produce documents from September 2020 onward, including business and personal bank account information and credit card statements. Father then propounded additional discovery requests consisting of interrogatories and largely duplicative requests for documents. Although mother again objected to requests seeking information predating entry of the divorce decree, she produced responsive documents that she had not already provided, including health insurance information and daycare receipts, and she answered unobjected-to interrogatories. Father subpoenaed mother's bank records from 2020 and 2021 directly from Bank of America. The bank complied with the subpoena, but the documents were not certified by a custodian of the records.

On November 30, father attempted to set a motion to compel for December 17, but the court removed it because father again set the date without consulting mother's counsel. The motion was reset for January 7, 2022, and the court advised father that if the motion were granted, "the issue of moving the trial date can be addressed" with the court at that time.

Father appeared by himself before the calendar-control judge on January 5 and requested a continuance of the January 12 trial date because he had a new job. The court denied his motion.

On January 7, the court granted father's motion to compel in part and denied it in part. The court sustained mother's objections to discovery requests "with respect to the time period that predates 2021." The court ordered mother to produce a 2021 profit and loss statement for her business, identify an investment account referenced in her bank statements, and provide any financial statements for 2021 not already produced or obtained by subpoena. The court ordered mother to comply by January 10 and denied father's request for a continuance. Also on January 7, mother filed a motion *in limine* to preclude father from presenting evidence that he had not provided in discovery or pursuant to the scheduling order. The motion *in limine* incorporated a motion to strike and a request for attorney fees that mother had filed on December 10, 2021.

Mother produced the documents as ordered. Additionally, the morning of trial, she supplemented her production of work-related childcare expenses, providing November and December 2021 receipts that reflected costs incurred through an afterschool care program. Mother advised the court that father was aware of the program and the expenses appeared on bank account statements she previously produced in discovery. Noting that the documents were "not complex," the court granted father a fifteen-minute recess to review them.

Once the trial started, the court allowed father to testify, despite mother's objection because he had not listed himself on the witness list, as required by the scheduling order. However, father's repeated attempts to admit documentary evidence failed due to lack of foundation and authentication. The court denied father's mid-trial request for a continuance so that he could hire a lawyer.

During cross-examination, father acknowledged that his 2021 income was $218,595, as reflected in pay statements admitted into evidence. At that time, the court also admitted an email that father sent in September 2021, in which he represented to mother's counsel that he "make[s] less[] now." Father also testified that although he had requested a continuance on January 5 because of new employment, the job was "postponed," and he was still working for the same company.

The court precluded father from calling mother to testify because she was not named on his witness list, as required by the scheduling order. Father next attempted to call his parents as witnesses. The court sustained mother's objection to this evidence, however, because father had not disclosed in discovery that his monetary support for his parents was a reason to deviate from guideline child support. Further, father had not responded to a specific request for documents showing monetary support for his parents.

At the end of father's case, mother moved to strike and requested attorney fees, presenting an affidavit for $12,372.69 and a supporting billing statement. The court granted the motion to

strike because father presented "no admissible evidence as to the facts alleged in [his] petition" to modify child support.

The court also awarded mother $12,000 in attorney fees and stated:

> [W]hen you take a look at the motion [to modify child support] . . . and then look at the evidence that was submitted today in support of it, there was nothing. Zero. I don't see why [mother] . . . should have to pay for anything. . . . I've never actually really seen anything like it. There was no evidence to support anything.

The court noted that it "expected a fee substantially more" than $12,000.

Father filed a motion for reconsideration, which the court denied.

## ANALYSIS

### I. Evidentiary Rulings

Several of father's assignments of error challenge the court's evidentiary rulings. "This Court will not overturn a circuit court's exercise of its discretion in determining whether to admit or exclude evidence unless the record demonstrates that it abused its discretion." *deCamp v. deCamp*, 64 Va. App. 137, 147 (2014); *see also Hinkley v. Koehler*, 269 Va. 82, 91 (2005).

### A. Father's Documentary Evidence

Father contends the court erred in preventing him from introducing documents that mother had produced in discovery and referenced in her interrogatory answers. He argues that "those documents were effectively authenticated and/or adopted by [her]" and introducing them would not cause her "surprise or prejudice."

Father's assignment of error fails to specify which documents were wrongfully excluded on these grounds. His transcript citations cover a range of arguments applied to various documents. Additionally, his motion for reconsideration did not address the court's exclusion of documents on these grounds. He merely challenged the court's exclusion of mother as a witness because, as a result, he could not use her to authenticate documents pertaining to her income.

- 5 -

Rule 5A:20(c) requires assignments of error to list "the specific errors in the rulings below." If an assignment of error does not meet the requirements of Rule 5A:20, we dismiss it. Rule 5A:20(c)(2). This Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." *Barrs v. Barrs*, 45 Va. App. 500, 512 (2005) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). "The object of [an] assignment of error is to point out the specific errors claimed to have been committed by the court below," thereby alerting the reviewing court and opposing counsel to the "points [upon which] . . . counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points." *Puckett v. Commonwealth*, 134 Va. 574, 579 (1922) (quoting *First Nat'l Bank of Richmond v. William R. Trigg Co.*, 106 Va. 327, 341 (1907)). "[A] general assignment of error . . . without pointing out the specific errors complained of, does not amount to any assignment of error at all." *Id.* at 580; *see also Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017) ("A properly aimed assignment of error must 'point out' the targeted error and not simply take 'a shot into the flock' of issues that cluster around the litigation." (quoting *Plant Lipford, Inc. v. E.W. Gates & Son Co.*, 141 Va. 325, 332 (1925))).

Because father's assignment of error concerning the exclusion of documentary evidence fails to satisfy the specificity requirements of Rule 5A:20, we decline to consider it.

### B. Excluding Mother as a Witness

When father sought to call mother as a witness, the court sustained her objection because father had not identified her on his witness list, as required by the scheduling order. Father had only listed his parents as potential witnesses. The order precluded calling witnesses not named at least fifteen days before trial unless the "testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the . . . witness was through inadvertence." In his motion

for reconsideration, father argued that his failure to list mother as a witness "was certainly through inadvertence," as he "did not know he even need to list [m]other, since she was one of the parties."

We hold that the court's exclusion of mother as a witness, in accordance with the scheduling order, was not an abuse of discretion. *See Reaves v. Tucker*, 67 Va. App. 719, 736 (2017) (finding no abuse of discretion in a court's decision to "uphold the scheduling order by denying [the party] permission to present any witnesses or exhibits that had not been disclosed prior to trial"). Scheduling orders "facilitate the orderly administration of cases" and "must be enforced by the trial courts." *Id.* at 732; *see also* Rule 1:18. "There is little point in issuing such orders if they amount to nothing more than a juristic bluff—obeyed faithfully by conscientious litigants, but ignored at will by those willing to run the risk of unpredictable enforcement." *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006). "The impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and trial courts alike." *Id.*

Mother filed detailed objections to father's witness and exhibit lists. If father had properly listed mother, she could have objected and prepared for any direct and cross-examination. Even assuming father inadvertently omitted mother from his witness list, the record reflects that requiring her to testify—particularly in a matter where the burden of proof rested entirely on father—would have caused surprise and undue prejudice, circumstances scheduling orders are meant to avoid. *See Reaves*, 67 Va. App. at 732; Rule 1:18. Therefore, the court did not abuse its discretion in refusing to let father call her as a witness.

## C. Excluding Father's Parents as Witnesses

Father argues the court erred by prohibiting him from calling his parents to testify about father's financial support of them. The court excluded the evidence because father failed to produce discovery in response to specific requests for information to substantiate this claim of financial support.

Again, we find that the court did not abuse its discretion in sustaining mother's objection. "The purpose behind discovery rules is to eliminate 'surprise at trial' by '"disclos[ing] all relevant and material evidence before trial in order that the trial may be an effective method for arriving at the truth and not a battle of wits . . . .""" *deCamp*, 64 Va. App. at 148-49 (first alteration in original) (quoting *Little v. Cooke*, 274 Va. 697, 717 (2007)). Because father never produced discovery responses identifying and documenting the amount of financial support he provided to his parents, the court did not err in preventing father from calling them to testify on this topic.

## II. Parties' 2020 Income

Father contends the court erred by "accepting that the parties' respective incomes had been determined for *the year* 2020," when the divorce trial occurred in June 2020 and the amended divorce decree was not entered until September 4, 2020. He argues the court erroneously gave preclusive effect to the 2020 income determinations and should not have limited his "ability to introduce or obtain discovery of evidence of either party's income" predating 2021.

Although the court sustained mother's discovery objections "with respect to the time period that predates 2021," father is incorrect that he did not obtain discovery from September 4 to December 31, 2020. Despite objecting to the scope of discovery, mother nevertheless produced documents dating back to September 2020, including her personal and business bank records and credit card statements. Additionally, father subpoenaed the bank directly and received mother's personal and business records dating back to 2020. Although the court excluded this evidence at trial, its rationale was not the preclusive nature of the 2020 income determinations in the divorce decree; instead, the court rejected the evidence due to lack of foundation and authentication.[2]

---

[2] The court also excluded evidence that had been admitted during the parties' June 2020 divorce trial because it refused to allow father to "relitigate" the basis for the original child support decision. Father did not assign error to the exclusion of evidence admitted at prior trial.

- 8 -

Father faults the court for compelling mother to produce only a 2021 profit and loss statement for her business, and not one from 2020. The record clearly demonstrates, however, that father only wanted that information to relitigate the amended divorce decree and challenge mother's alleged understatement of her 2020 income: in his motion to modify, father expressly stated that mother "has considerably understated her income in her previous testimony during the [d]ivorce hearing for the year 2020."

Father cannot relitigate the baseline support obligation set forth in the amended divorce decree. The decree was a final order that father did not effectively appeal, and "reconsideration of [the initial child support determination], without showing that a material change in circumstances has occurred, is barred by *res judicata*." *Hiner v. Hadeed*, 15 Va. App. 575, 581 (1993).

### III. Continuance Denial

Father challenges the court's denial of his mid-trial motion for a continuance. He claims that the court "overruled" the judge who docketed father's motion to compel and advised that if his motion was granted, "the issue of moving the trial date can be addressed with the [c]ourt at that time or thr[ough] calendar control if the [j]udge elects." Father argues that he was entitled to a continuance because mother was not ordered to produce documents concerning her business income until two days before trial and because she supplemented her responses concerning work-related childcare expenses the morning of trial.

Father did not renew his motion for a continuance before trial began. After a fifteen-minute recess for father to review the additional documents, the trial proceeded without objection. It was during the trial, when father was unable to introduce his documentary evidence because of a lack of foundation and authentication, that he requested a continuance "until I hire an attorney." The court found that father had not shown good cause for his request and, citing the scarcity of trial dates due to the pandemic and the money mother had spent on counsel fees, denied his motion.

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." *Id.*

The court did not abuse its discretion in denying father's continuance request. When father's motion to compel was docketed, the calendar-control judge advised that the court could "address[]" the request for the continuance if the motion was granted. That judge did not guarantee father a continuance. Although father claims that he was prejudiced because he had only recently received mother's additional document production and needed a lawyer to get these and other documents into evidence, father's "lack of representation was not a new circumstance." *Reaves*, 67 Va. App. at 735 (denying request for a continuance on the day of trial where party's attorney had withdrawn several months earlier). Mother's 2021 profit and loss statement reflected financial information father previously had received in discovery, and the childcare receipts provided the morning of trial were, as the court noted, "not complex." The court gave father time before trial to review the receipts, and, after taking that time, father did not object to the trial going forward. It was only after father experienced difficulties moving documents into evidence that he cited the need for an attorney as a reason to continue the case, even though he had been *pro se* for all but approximately one month while the matter was pending. Further, father was on notice as to the weaknesses in his case through mother's motion to strike, filed one month before trial.

Considering the totality of these circumstances, the court did not err in proceeding with trial as scheduled.

## IV. Motion to Strike

Father contends that the court erred in granting mother's motion to strike because evidence admitted during mother's cross-examination of him showed that his income had changed.

"[W]hen the trial court grants a motion to strike the plaintiff's evidence, [appellate courts] review the evidence on appeal in the light most favorable to the plaintiff." *Green v. Ingram*, 269 Va. 281, 284 (2005).

"Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award." *Crabtree v. Crabtree*, 17 Va. App. 81, 88 (1993). Father sought a reduction in child support based, in part, on his decreased income. However, mother's cross-examination of father demonstrated that his income had *increased,* which is not a material change that would warrant the relief he requested. *See id.*

Father also claimed that mother no longer incurred the work-related childcare costs specified in the amended divorce decree and he spent considerable funds caring for his parents. However, father was unable to move any documents supporting these allegations into evidence. When the court granted the motion to strike, it specifically noted that father had produced "[z]ero" evidence in support of his request for a modification of support.

Father filed the motion to modify child support; he had the burden to prove a material change justifying the modification. *See id.* The trial record only contains evidence that father's income had increased, not decreased as alleged. It contains no evidence supporting father's other bases for modification. Upon review of the evidence, even in the light most favorable to father, we find that the court did not err in striking his motion to modify.

V.  Attorney Fees

A.  Trial Attorney Fees

Father argues that the court erred by granting mother $12,000 in attorney fees without finding that the parties entered into a marital agreement that provided for fees or determining that the fees were a sanction generated by his improper conduct.

However, Code §§ 20-79(b) and 20-99(6) give courts discretionary authority to "award attorney's fees and other costs as the equities of a divorce case and its ancillary proceedings may require." *Tyszcenko v. Donatelli*, 53 Va. App. 209, 222 (2008). "This discretionary authority also extends to related post-divorce proceedings." *Id.* Although *Tyszcenko* addressed post-divorce child custody proceedings, appellate courts have routinely recognized this discretionary authority in post-divorce child support modification cases, as well. *See, e.g.*, *Carter v. Thornhill*, 19 Va. App. 501, 512 (1995) (stating that discretionary attorney fees "can be awarded in child support modification cases"); *see also Edwards v. Lowry*, 232 Va. 110, 114 (1986) (remanding for award of attorney fees to a mother who, after the divorce, "was required to engage counsel for four court appearances in less than one year as a result of [the father's] persistent efforts to reduce the level of child support," which were "meritless"); *Richardson v. Richardson*, 30 Va. App. 341, 351-52 (1999) (remanding for the court to reconsider a mother's request for attorney fees incurred in defending the father's motion to reduce child and spousal support).

Although father contends that the court erred by awarding attorney fees as a "sanction" under Code § 8.01-271.1[3] because he had a reasonable basis to pursue his motion to modify child

---

[3] In relevant part, Code § 8.01-271.1(B) provides that a party's signature constitutes a certification that he has read the pleading and that it "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" and "is not interposed for any proper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." If a party violates this certification, a court "shall impose

support, the court did not base its decision on the sanctions statute. "[T]he trial court, in the exercise of its discretion, may award attorney's fees and costs to 'either party as equity and justice may require.'" *Tyszcenko*, 53 Va. App. at 223 (quoting what is now Code § 20-99(6)). Therefore, after considering "'the circumstances of the parties'" and "'the equities of the entire case,'" a trial court may exercise its discretion and issue an award of attorney fees and costs that is reasonable "under all of the circumstances revealed by the record." *Id.* (quoting *Taylor v. Taylor*, 27 Va. App. 209, 217 (1998)); *see also Richardson*, 30 Va. App. at 351-52.

Father also argues the court erred in setting the amount of the attorney fee award at $12,000. He contends there was no basis for that amount because mother's attorney fee affidavit was not properly before the court and because the award effectively punished father for noncompliance with discovery, yet mother never sought a motion to compel. Father also relies on the fact that his motion to compel discovery was granted in part.

The court did not abuse its discretion in awarding mother $12,000 in attorney fees. "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *Allen v. Allen*, 66 Va. App. 586, 602 (2016) (alterations in original) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)). Here, the circumstances reflect that the court awarded fees after granting mother's motion to strike, finding that father presented no evidence of materially changed circumstances that would warrant reducing his support obligation. The court remarked, "I've never actually really seen anything like it. There was no evidence to support anything."

The court also noted that mother's attorney fee request was less than expected and it was "clear that [mother's counsel] was doing everything she could to keep . . . her fees down." The billing statement attached to the affidavit supports this finding. Further, the record reveals that

---

. . . an appropriate sanction . . . including [an order to pay] reasonable attorney fees." Code § 8.01-271.1(D).

- 13 -

father caused unnecessary expense by docketing a motion to compel before discovery responses were even due. He propounded discovery requests seeking documents outside the relevant time frame, going back as early as 2018 prior to the parties' divorce. In response to mother's interrogatories, father did not provide a single substantive answer, only objections. He did not even identify his employer in discovery, and he gave the court conflicting and evasive information about his job status: when he went to calendar control seeking a continuance days before trial, he claimed he had a new job; at trial, however, he admitted that he was still working for the same company.

The record thus clearly reflects that, in awarding attorney fees, the court considered what the equities of the case and justice required. *See Tyszcenko*, 53 Va. App. at 223. The court was not imposing a sanction under Code § 8.01-271.1. Based on our review, we hold that the court did not abuse its discretion in granting $12,000 attorney fees to mother.

## B. Appellate Attorney Fees

Mother requests attorney fees incurred on appeal. A determination of whether to award appellate attorney fees is discretionary. *See* Rule 5A:30(b); *Friedman v. Smith*, 68 Va. App. 529, 545-46 (2018). An appellate court considers factors including "whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" *Friedman*, 68 Va. App. at 546 (quoting what is now Rule 5A:30(b)(2)(C)). "In domestic relations cases, we award appellate attorney's fees when the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles.'" *Id.* (quoting *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)).

Father's appeal presented issues that were both procedurally defaulted and "not fairly debatable," considering the record and applicable law. *Brandau*, 52 Va. App. at 642. Therefore, we find that mother is entitled to reasonable attorney fees incurred in connection with this appeal and

remand to the circuit court solely for a determination and award of the appropriate amount pursuant to Rule 5A:30(b)(2)(D).

## CONCLUSION

We dismiss, under Rule 5A:20(c)(2), father's challenge to the court's exclusion of documents that mother had produced in discovery or referenced in interrogatory answers. Regarding the remaining assignments of error, we find that the court did not abuse its discretion in its evidentiary rulings or by denying father's motion for a continuance. Additionally, we hold that even considering the evidence in the light most favorable to father, the court did not err in granting mother's motion to strike. We also find no error in the court's award of attorney fees to mother. Accordingly, we affirm the judgment below and remand for an award of appellate attorney fees.

*Affirmed in part, dismissed in part, and remanded.*