COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia

RAYQUON AMOD STONE

v.      Record No. 0241-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DANIEL E. ORTIZ
APRIL 16, 2024

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Joseph W. Milam, Jr., Judge

James C. Martin (Martin & Martin Law Firm, on briefs), for
appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the trial court convicted Rayquon Amod Stone for conspiracy to

distribute a Schedule III drug and conspiracy to deliver drugs to an inmate of a correctional facility.

For each offense, the trial court sentenced Stone to six years of imprisonment with four years and

six months suspended. Stone argues that the trial court erred in finding that Charmaine Carter

("Carter") was unavailable as a witness, thus resulting in the erroneous admission of her

out-of-court statements. Stone also challenges the sufficiency of the evidence to sustain his

conspiracy convictions. Because Stone failed to properly preserve his argument in his first

assignment of error and there was indeed sufficient evidence to convict, we affirm the judgment of

the trial court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Stone's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

I. The Offenses

On March 25, 2020, the mailroom at Green Rock Correctional Institution received and processed a parcel postmarked March 24, 2020, addressed to Justin Sproull—an inmate at the facility. The mailroom staff immediately flagged an inconsistency between the post office's zip code—from which the package was mailed from—and the return address's zip code. Inside the package was an "Action Bible," in which investigators found concealed suboxone strips. During the investigation, Special Agent Matthew Bennett with the Virginia Department of Corrections and Pittsylvania County Deputy Sheriff Arnold Hamlett reviewed recorded telephone calls that took place at the facility between Carter and either Stone or Dante Carter ("Dante"). In February and March 2020, Stone gave Carter instructions by phone to meet with a woman, providing the name and phone number of Sproull's mother. Stone told Carter to meet the woman at Walmart and to get "fifty." Stone instructed Carter to use a Bible and advised that it needed to appear "professional."

During a conversation on March 23, 2020, Carter assured Stone that the package would look official when it was opened. On March 24, 2020, the day the package was postmarked, Stone asked Carter if she had done what she had planned to do that day, and she indicated that she was "doing it now." Two weeks after the package was confiscated, Stone told Carter he had not received the package so Carter agreed to call the prison to inquire as to the package's whereabouts. On April 14,

- 2 -

2020, Deputy Hamlett answered a phone call at the prison from a woman claiming to be associated with a church that sent a Bible to the facility, asking if the Bible had arrived for Sproull. Because Hamlett had reviewed a number of recorded phone calls between the suspected parties, he recognized the voice as Carter's—though she did not identify herself—and noted that the call originated from her phone. During the call, there was a "beep" on the call from Carter's end to indicate she was receiving another call. Simultaneously, video from within the prison showed Stone placing a phone call. Stone dialed the phone again, and Carter's phone "beeped" for a second time. After Hamlett's call with Carter ended, he heard Stone come on the line and tell Carter that he had just called her three times.

When the Commonwealth called Special Agent Bennett as a witness, the prosecutor asked if he interviewed Carter by telephone. Without elaboration, Stone objected to Special Agent Bennett's testimony about the conversation on hearsay grounds. The Commonwealth asserted that the statement qualified for admission under the statement against interest exception to the hearsay rule. The trial court overruled the objection and permitted Special Agent Bennett to testify about his conversations with Carter.

Special Agent Bennett testified that Carter admitted to mailing a Bible—purportedly from a church group—to an individual at Green Rock. Carter said she bought the suboxone strips about a week before purchasing the book. She recalled having phone conversations with both Stone and Dante discussing "the packages, moving money, arguing about if the product actually made it in or not[.]" In addition, Carter indicated that she and Dante had argued because Dante thought that Stone "had cut him out and not given him his share of the strips when they got in." When asked, Carter said that Stone had suggested that she send the book with the drugs in it.

- 3 -

In a phone call on May 11, 2020, Carter told Stone that she had talked to Special Agent Bennett by phone about the "mail shit" and that the jail calls had been recorded. Stone advised Carter not to talk to anyone who called her.

During an in-person conversation with Special Agent Bennett in early 2022, Carter confirmed that she previously told him about "sending in the book, filling out the envelope, paying cash for it and mailing it[.]" She remembered her "phone calls with everybody" about the package. The Commonwealth argued that it had established a prima facie case of conspiracy to permit the admission of statements by co-conspirators. Defense counsel stated that the Commonwealth had failed to establish such a basis and objected "to any evidence being admitted pursuant to that." When the trial court asked where the Commonwealth's proof had failed and if there was "anything in particular that [he was] point[ing] to," defense counsel responded "no." The trial court concluded that the Commonwealth had made a prima facie showing of conspiracy.

Dante testified that he pled guilty to one charge of conspiracy and would serve one year of incarceration in return for the dismissal of a second charge against him. Dante said that he knew that Stone was arranging to get drugs into the prison through Carter. Dante admitted to talking to Carter by telephone daily, and he identified their voices in recordings of jail calls that the Commonwealth played for the jury.

II.  Carter's Testimony

Outside the presence of the jury, the Commonwealth called Carter to the witness stand. The Commonwealth had subpoenaed Carter as a witness but expected that she would invoke her Fifth Amendment privilege against self-incrimination if questioned about telephone calls between her and Stone as well as her and Dante.

Responding to questioning, Carter testified that Dante is her brother and he was incarcerated at Green Rock with Stone, who was her boyfriend in 2020. Carter invoked her Fifth Amendment

- 4 -

privilege when the Commonwealth asked if she had spoken to the police about her involvement in a conspiracy and whether she and Stone attempted to distribute suboxone at Green Rock. She admitted that she spoke to Stone on the phone while he was at Green Rock but denied that they discussed a plan to mail suboxone into the facility. Carter again invoked her Fifth Amendment privilege when the prosecutor asked if she spoke to Stone after a package with hidden suboxone was intercepted at the prison. Defense counsel declined to cross-examine Carter.

The Commonwealth asked the trial court to declare Carter unavailable as a witness because she had asserted her Fifth Amendment privilege against self-incrimination. The defense objected, arguing that "[u]navailability is only established and certainly as it relates to the [C]onfrontation [C]lause, can only be considered against the defendant's interest if the defendant was somehow responsibility [sic] for contributing to the witness's unavailability." Defense counsel further stated, "[S]he's not unavailable just because she asserts her Fifth Amendment" rights. The trial court observed that the unavailability of a witness related only to the potential admission of hearsay testimony, not the satisfaction of constitutional confrontation requirements. Defense counsel responded, "[W]hat's before this [c]ourt is insufficient for this particular witness to be declared unavailable so that the Commonwealth can try to . . . admit . . . evidence that they would not otherwise be able to admit but for the finding that this witness is unavailable." When asked for further comment, defense counsel said that "unavailability as it relates to the [C]onfrontation [C]lause certainly has been established but as it relates to the hearsay rule [sic]." The trial court interjected and disagreed with defense counsel, observing that Carter was in court and "available for confrontation" and "that's what confrontation is about." Although defense counsel agreed with the trial court's observation, they stated, "certainly we are going to object to hearsay being . . . admitted as a result of the finding that this witness is unavailable based on her asserting her Fifth Amendment right."

The trial court concluded that Carter was "unavailable for purposes of hearsay" and noted defendant's ongoing objection solely to the issue of hearsay. The trial court concluded the exchange on the issue: "[S]o if there's something that needs to be brought to the attention of the [c]ourt by way of an objection, other than this specific issue, that's not going to be a continuing objection." Defense counsel agreed. The jury convicted Stone of two counts of conspiracy, and the trial court imposed an active sentence of one year and six months of imprisonment for each offense. This appeal followed.

ANALYSIS

I.

Stone's first assignment of error alleges that "[t]he trial court erred in ruling Charmaine Carter to be an unavailable witness when there had been insufficient questioning to make this determination," thus resulting in "the admission of her statements in violation of the hearsay rule" and in "violation of the Confrontation Clause of the 6th Amendment . . . ." The Commonwealth asserts that the "admission of Carter's different statements presents distinct legal issues," and the assignment of error fails to distinguish them or adequately identify the claimed trial court error. Furthermore, the Commonwealth argues that because of "Stone's failure to identify the specific statements he contends were erroneously admitted, and to correlate those statements to what he asserts is the correct legal framework," this Court is left to decide for Stone "which legal arguments might apply to every statement." Thus, the Commonwealth maintains, this Court should not consider the assignment of error. We agree.

At the outset, we emphasize the important role of an assignment of error in defining the issues this Court properly considers on appellate review. Rule 5A:20(c) requires an opening brief to list "the specific errors in the rulings below[.]" "An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal.

- 6 -

Assignments of error are the *core* of the appeal." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017). "With the assignment of error, an appellant should 'lay his finger' on the alleged misjudgment of the court below." *Stoltz v. Commonwealth*, 297 Va. 529, 534 (2019) (quoting *Forest Lakes Cmty. Ass'n*, 293 Va. at 122). "The object of [an] assignment of error is to point out the specific errors claimed to have been committed by the court below," thereby alerting the reviewing court and opposing counsel to the "points [upon which] . . . counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points." *Puckett v. Commonwealth*, 134 Va. 574, 579 (1922) (quoting *First Nat'l Bank of Richmond v. William R. Trigg Co.*, 106 Va. 327, 341 (1907)). "A properly aimed assignment of error must 'point out' the targeted error and not simply take 'a shot into the flock' of issues that cluster around the litigation." *Forest Lakes Cmty. Ass'n, Inc.*, 293 Va. at 123 (quoting *Plant Lipford, Inc. v. E.W. Gates & Son Co.*, 141 Va. 325, 332 (1925)). For the following reasons, we do not reach the merit of the cluster of claims that Stone attempts to assert within this one assignment of error.

Stone asserts that the trial court erred in finding Carter to be an unavailable witness "when there had been insufficient questioning to make this determination[.]" Thus, the underlying premise of Stone's claim is that the questioning of Carter was somehow deficient to determine her availability as a witness. Stone did not raise this specific argument in the trial court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."

*Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both specific and timely — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (emphasis omitted) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009).

While Stone objected to the trial court's finding that Carter was unavailable because she invoked her privilege against self-incrimination, Stone only suggested that Carter was questioned insufficiently by stating that "[w]hat's before this [c]ourt" did not show that Carter was unavailable. Stone, however, did not raise a specific and timely argument to the trial court that more inquiry of Carter was required for the determination. Stone never asserted any deficiency in the questions posed by the prosecutor or in Carter's responses invoking her Fifth Amendment privilege. On appeal, Stone vaguely suggests only that there should have been "more specific questions"—such as "What did Stone tell you?"—before she could qualify as being "unavailable." Stone made no such claim at trial, nor does he now explain how such a question would determine with certainty that Carter would continue to assert her Fifth Amendment right.[1]

---

[1] "Allowing a witness to make a blanket assertion of the privilege is generally not permitted. Instead '[o]nce a witness asserts his fifth amendment right, some investigative questioning must be allowed.'" *Palmer v. Commonwealth*, 71 Va. App. 225, 234 n.4 (2019) (alteration in original) (quoting *Cunningham v. Commonwealth*, 2 Va. App. 358, 361 (1986)). While there may have been additional questions which Carter could have answered that would not have called for incriminating answers, "appellant did not seek to perform any 'investigative questioning.'" *Id.* Rather, Stone's counsel chose not to cross-examine Carter, relying on a largely general objection at trial.

In fact, Stone acknowledged at trial that Carter had the right to assert the Fifth Amendment privilege to the potentially incriminating questions from the prosecutor. Crucially, Stone had the opportunity to cross-examine Carter and pose the questions he believed probative to the issue, yet he chose not to do so. *See Green v. State*, 679 S.E.2d 348, 355 (Ga. Ct. App. 2009) ("Hence, no effort was made by defense counsel to ascertain whether Robinson would continue his refusal to answer certain questions or would offer testimony in explanation of his [prior trial testimony] or in exculpation of [Green]. Under these circumstances, Green was not denied the right of confrontation, he simply did not exercise it, and he has waived any objection he may have had on confrontation clause grounds." (alterations in original)).

Accordingly, Stone failed to alert the trial court to the underlying claim he now raises—that more questioning of Carter was required for a proper determination of her unavailability as a witness. Thus, we consider this aspect of Stone's argument waived.

Stone's assignment of error also asserts, tangentially, that the trial court's ruling on Carter's availability as a witness resulted in the erroneous admission of hearsay evidence. In Stone's argument, however, he fails to address that "[t]he law is firmly established in Virginia that a declarant is unavailable [as a witness] if the declarant invokes the Fifth Amendment privilege to remain silent." *Palmer v. Commonwealth*, 71 Va. App. 225, 235 (2019) (quoting *Boney v. Commonwealth*, 16 Va. App. 638, 643 (1993)).[2] There is no question that Carter invoked her Fifth Amendment privilege when asked questions relating to the conspiracy charges. Stone does not claim that Carter had no legitimate reason to invoke the privilege; in fact, he conceded as much in the trial court. *See Bethea*, 297 Va. at 753 n.9 ("A litigant cannot be permitted to 'approbate and reprobate' by 'disavow[ing] on appeal the very argument [he] made

---

[2] Because Stone's argument is waived under 5A:18, we need not reach the specific question regarding a witness's unavailability status under the Fifth Amendment when he answers some questions and not others.

at trial' because 'a litigant may not take "successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."'" (alterations in original) (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 204 (2016))). Indeed, Stone does not argue that, assuming Carter was an unavailable witness, the hearsay exception for declarations against penal interest did not otherwise apply to at least some of Carter's statements. *See* Va. R. Evid. 2:804(b)(3)(B); *see also Warnick v. Commonwealth*, 72 Va. App. 251, 271 (2020) (the exception permits admission of testimony where the declarant is unavailable, the statement was against his penal interest when he made it, the declarant knew the statement was against his interest, and other evidence of the statement's reliability connects him with the crime).

Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "We require adherence to this rule because '[a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.'" *Id.* (alteration in original) (quoting *Jones*, 51 Va. App. at 734). "To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises." *Id.* (quoting *Jones*, 51 Va. App. at 734-35). Stone failed to develop an argument that the finding of Carter's unavailability led to the erroneous admission of hearsay evidence, and we do not consider such a claim.[3]

_____

[3] We note that the determination of the unavailability of a witness—the ruling that Stone challenges here—is not a factor in the application of the hearsay exception for statements made by a co-conspirator in furtherance of a conspiracy. *See* Va. R. Evid. 2:803(0)(E).

- 10 -

Within his argument on brief, Stone maintains that the Commonwealth failed to prove a prima facie case of conspiracy to allow the admission of the evidence under the hearsay exception applying to a co-conspirator's statements in furtherance of the conspiracy. As written, however, the assignment of error fails to encompass any challenge to the Commonwealth's proof of a prima facie case of conspiracy. Thus, this Court will not consider any such argument. *See Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017) ("This Court is limited to reviewing the assignment of error presented by the litigant . . . [and] do[es] not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error.").

Finally, Stone attempts to assert that the trial court's ruling on Carter's unavailability as a witness resulted in the admission of evidence in violation of his rights under the Sixth Amendment Confrontation Clause. During argument at trial, Stone initially conflated the concept of unavailability for the purpose of hearsay with the satisfaction of his constitutional right to confront the evidence against him, but then agreed with the trial court that the two issues were distinct. The trial court clarified that it was declaring Carter unavailable only as it related to any hearsay objection, not as implicating Stone's right to confrontation. The trial court stated that it would consider any such objections to testimony as they arose. Nonetheless, Stone never subsequently raised any claim at trial that evidence was admitted in violation of his constitutional right to confrontation. Therefore, Stone waived this claim, *see* Rule 5A:18.[4]

---

[4] Although Stone attempts to invoke the ends of justice exception in his reply brief, he did not do so in his opening brief. "Rule 5A:20(e) requires that when an issue has not been preserved for appellate review, the *opening brief* shall state why the good cause and/or ends of justice exceptions to Rule 5A:18 are applicable." *Stokes v. Commonwealth*, 61 Va. App. 388, 397 (2013) (emphasis added); *see also Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that this Court will not address an argument raised for the first time in a reply brief).

II.

Stone lastly asserts that the evidence was insufficient to convict him of conspiracy to distribute drugs to an inmate and conspiracy to distribute a Schedule III drug. He argues that the evidence was "dismally insufficient, inherently incredible, and would not convince any reasonable fact finder" because Dante's testimony "was worthless" and Carter's hearsay statements should not have been admitted. Because we previously did away with his argument against the admission of Carter's statements, we need only address his assertions against Dante's testimony.

Although Stone attacks Dante's testimony—determining it to be weak—"[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009). Additionally, Dante's testimony was not inherently incredible as to be "so manifestly false that reasonable men ought not to believe it," or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). Dante testified that Stone and he had an agreement to bring suboxone into the prison, and he learned from Deputy Hamlett that his sister was involved in getting drugs into Green Rock. This is not inherently incredible, and the jury—having seen and heard Dante—had the ability to assess his credibility as a witness and weigh his testimony—to which we defer. *See Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015). In terms of the other evidence presented by the Commonwealth; the recorded telephone calls between all parties involved, the Bible containing suboxone strips, and Carter's statements to Agent Bennett; all support Stone's conviction. Thus, the evidence was sufficient to convict Stone.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*